# Louisville & Nashville Railroad Co. *v.* Mothershed.

*Action by Employe to Recover Damages for Personal Injuries.*

1. *Different causes producing injury complained of, may be set forth in different counts in the same complaint.*—In an action by an employe against a railroad company for personal injuries sustained by the derailment of a car, the complaint which sets forth in one count that the injury was caused by a defect in the track and machinery of defendant, in a second, that it was caused by the negligence of an employe of defendant in charge of an engine on its railway, and in a third, that it was caused by the negligence of an employe in the service of defendant having superintendence of its yard and train, states but one cause of action.

2. *Waiver of plea of contributory negligence.*—Where it is manifest that the case was tried in the court below as if on issue joined on the plea of contributory negligence, it will be treated on appeal as if such defense had been specially interposed.

3. *Foreman's knowledge of management of engine, irrelevant.*—Whether the foreman of the crew of a switch engine knew how to run a locomotive is irrelevant, when it is shown that he had no part in its management.

4. *Expert testimony.*—A witness who has been engaged in operating trains on a railroad for eight years may be allowed to give his opinion as to the effect of a car heavily loaded or empty, running over a switch improperly set.

5. *Declaration of agent showing knowledge of locality.*—The declaration of the yard-master of a railroad made the night before in passing the switch where the accident happened that the switch was all right, was admissible for the purpose of showing that he knew its location.

6. *Judicial knowledge of tables of mortality.*—Courts take judicial knowledge of the American tables of mortality in estimating the probable length of human life, and testimony proving such tables is not an error of which either party can complain.

7. *Disobedience of rules, as evidence of negligence.*—If, in disobedience of the rules of a railroad company, a person in charge of an engine failed to stop or slow up in approaching a switch in the railroad yard, and injury resulted therefrom the defendant is liable for the resulting damage, unless the plaintiff contributed to the injury

APPEAL from City Court of Birmingham.

Tried before Hon. W. W. WILKINSON.

Wade H. Mothershed brought suit against the Louisville & Nashville Railroad Company for injuries received while in its service by reason of the alleged negligence of defendant.

The complaint contained three counts to which a fourth was added, as an amendment. The first alleged that the injury was caused by a defect in the machinery and track of defendant. The second that it was caused by the negligence of a person in the employ of defendant, in charge of an engine, and the third that it was caused by a person in the service of defendant who had charge of the train and yards of defendant. Demurrers interposed to the first three counts were overruled and the case tried on the general issue.

The plaintiff testified as a witness that he was foreman of a switching crew in the yard of defendant at Birmingham, and was under the control of one McNutt, the yard master, that witness controlled the movements of the engine and stated: "You can have charge of an engine in two ways, the engineer has the running of it." Counsel for plaintiff then asked: "Did you know anything about running an engine?" and defendant objected. Witness answered in the negatiive and defendant moved to exclude his answer. Witness testified that he had been in the railroad business for eight or nine years as brakeman, switchman and foreman, and was then asked "What would be the result if a car should run over a switch like the one which caused the accident?" He answered that a heavily loaded car would throw the switch, but an empty one would not, unless moving slowly. Defendant objected to the question and moved to exclude the answer, and also objected to the statement of witness that it was the custom on the defendant's road for engineers to stop before running through switches. He also testified that McNutt stated the night before in passing the switch that it was all right. The accident occurred about four o'clock in the morning and the car was derailed at a switch, by which plaintiff's arm was crushed so that it was amputated. There was a conflict in the evidence as to the rate of speed of the engine at the time the car was derailed, but it was shown to be more than eight miles an hour, which was the limit fixed by an ordinance of the city. The American tables of mortality were introduced and showed plaintiff's expectancy of life to be thirty-seven years ; objections were made

by defendant to this, and various other parts of the testimony, which will be understood from the opinion. The defendant excepted to the refusal of the court to give the following charges : (1) "I charge you, gentlemen of the jury, that the undisputed evidence in this case shows that McNutt was not operating or running the engine when the engine reached Eighteenth Street." (2) "If the jury believe from the evidence that either the plaintiff or the switchman Dixon, whose deposition was read in evidence in this case, knew that the switch was set for the side track in time to have signaled the engineer and averted the accident, and failed to do so, then the jury must find for the defendant." (3) "I charge you, gentlemen of the jury, that the undisputed evidence in this case shows that McNutt did not operate or run the engine all the way from Fourteenth to Eighteenth Street." (4) "If the jury believe from the evidence that the switchman Dixon, whose deposition is in evidence in this case, knew at the time the train on which he and the plaintiff were riding reached Sixteenth Street that the switch at which the car on which he and the plaintiff were riding was derailed, was set for the side track ; and if the jury further believe from the evidence that the said Dixon's duty to see that the said switch was set for the main track before the train got to it ; and if the jury further believe that the said Dixon did not give the engineer of the engine which was pushing said train a signal to slow or stop said train when it was approaching such switch until said train was so near such switch that the engineer, even if he had used all the means in his power to have averted the accident, could not have averted the accident,—you must find for the defendant." (5) "If the jury believe that the plaintiff knew of the location of the switch at which the accident occurred, and knew that it was set for the side track in time to have signaled the engineer to have stopped his engine before reaching the switch, and failed to do so, then the jury must find that the plaintiff was guilty of contributory negligence, and cannot recover in this action." (13) "The burden of proof is on the plaintiff to show by a preponderance of the evidence to the satisfaction of the jury, not only that there was a defect in the steam brake, but also that it had not been remedied owing to the negligence of defendant." (14) "If the jury believe from the evidence that the defect in the steam brake of the engine upon which the plaintiff was riding at the time of his injury arose a half an hour before the time of plaintiff's injury, and just before the engine started from Fourteenth Street to go to Twenty-Fourth

Street, and are not satisfied that it arose from the negligence of defendant, then they cannot charge the defendant with negligence in this action because of such defect." (21) "If the jury believe from the evidence that at the time the first signal was given by either the plaintiff or the witness Dixon, it was too late for the engineer, by the use of all the means in his power, to have averted the accident; and if the jury believe that the steam brake on the engine was in good repair at the time of the accident; and if the jury believe that the plaintiff knew the location of said switch, and that it was set for the side track, when or before he reached Sixteenth Street, immediately before the accident,—then the jury must find for the defendant." (23) "If the jury believe that the plaintiff signaled the engineer to come ahead and increase his speed at a point about 400 or 500 feet from the switch at which the car on which he was riding was derailed, and that the engineer, in obedience to such signal, did increase his speed; if the jury believe further from the testimony that the plaintiff or the witness Dixon or both gave slow and stop signals at a point between Eighteenth Street and the switch, and that the engineer negligently failed to see such signals; and if the jury believe from the evidence that at the time the first of such signals were given it was impossible for the engineer, by the use of all means in his power, to avert the accident; and if the jury believe that the steam brake on the engine was in good repair,— then the failure of the engineer to make any effort to slow or stop his engine from the time such signals were given till he reached the switch, in obedience to such signals, is not negligence of which the plaintiff, under the evidence in this case, can complain." (24) "If the jury believe that no signal was given by either the plaintiff or the switchman Dixon, whose deposition was read in evidence in this case, to stop the train on which they were riding until it was too late, even by the use of every preventive effort in the power of the engineer, to have averted the accident, then the jury must find for the defendant."

HEWITT, WALKER & PORTER, for appellant, insisted that plaintiff's inability to run an engine shed no light on the case, citing *Gibbs v. R. R.* 11 Q. B. 23; 12 *Ib.* 208; that plaintiff was guilty of contributory negligence, *R. R. v. Propst,* 83 Ala. 518; *R. R. v. Watson,* 90 Ala. 68; *Pryor v. L. & N. R. R.* 90 Ala. 32, and many other authorities.

BOWMAN & HARSH, and PHARES COLEMAN, for appellee, contended that the expert testimony was properly allowed. *R. R. v. Jones*, 92 Ala. 218; *R. R. v. Hall*, 87 Ala. 708; that the testimony as to the custom of engineers was admissible, *R. R. v. Graham*, 10 So. Rep. 283; *Hissong v. R. R.* 91 Ala. 514; that the tables of mortality were admissible; *R. R. v. Chandler*, 84 Ga. 37; *Gordon v. Tweedy*, 74 Ala. 232; *Mc. Donnell v. Ins. Co.*, 85 Ala. 401, and a great number of other authorities.

COLEMAN, J.—The action was brought to recover damages for personal injuries. The jury assessed plaintiff's damages at ten thousand dollars. The complaint contains four counts. Demurrers were interposed to the complaint as a whole, and to each count separately, all of which were overruled by the court. Afterwards additional grounds of demurrer were assigned, but the record fails to show any ruling of the court upon the additional assignments. We presume the defendant waived his right to have the court pass upon those filed subsequent to the ruling of the court upon the demurrer. Issue was then joined upon the plea of the general issue. There was no special plea of contributory negligence, but it is manifest that the case was tried throughout, as if this defense had been specially pleaded. On the authority of the case of *Richmond & Danville R. R. Co. v. Farmer, ante,* 141, decided at the present term, we will consider the exceptions as if the plea of contributory negligence had been regularly pleaded.

It is argued, that under the rule declared in *Highland Avenue & Belt R. R. Co. v. Dusenberry*, 94 Ala. 413, s. c. 10 So. Rep. 274, the complaint and each count thereof was defective, and that the court erred in overruling the demurrer. There may be some expressions in the *Dusenberry* case which apparently sustain this contention, but regard must be had to the character of the complaint, then under consideration. The pleader had united in the same count, causes of action arising under different sub-divisions of section 2590, and some of the averments were made disjunctively. It was not held that where the several causes, averred and relied upon for a recovery, arose under the same sub-division, were stated separately, but not disjunctively, and each averment contained a substantive cause of action, that such a count was demurrable. A count of this character fully informs the defendant that each substantive averment is relied upon, and he may prepare his defense accordingly. Proof of either will authorize a recovery. The distinction must be

kept in mind, where a single count contains several distinct, independent, averments, each presenting a substantive cause of action, and a count containing several averments, all entering into as a part of, and contributing to make up but one cause of action. As to the former, proof of either will authorize a recovery, whereas in the latter case, it is necessary to prove all the averments which, according to the pleadings, constitute the negligence. Under our system of pleading, we hold the demurrers were properly overruled.

The court charged the jury, if they believed the evidence, to find for the defendant under the first count. An instruction of this character ordinarily relieves the court of the necessity of considering the demurrer to the count, but as the case must be reversed, we have thought best to consider its sufficiency; and for the further reason that the record shows that notwithstanding the general charge to find for the defendant under this count, the court refused to give certain charges (notably the 13th and 14th) which could have arisen under the first count only. The first count is the only one which charges a defect in the ways, works and machinery, and the two charges mentioned refer directly to the condition of the brake.

There was no cause of demurrer assigned to the 4th count, and no question as to its efficiency is before us.

The witness was asked, against the objection and exception of the defendant, if he knew any thing about running an engine; and answered that he did not. The witness had stated the relative authority of all the employees present; that he was conductor, under yard-master McNutt and assistant yard-master Jennings, and that the engineer "had full control of the running" of the engine, but the crew were under the charge of the plaintiff. We do not perceive the materiality of the evidence elicited by the question, or how it was calculated to throw any light upon the issue before the jury. We think the proof shows that the witness had ample experience to give his opinion as an expert as to the effect of a car heavily loaded or empty, running rapidly over a switch improperly set. He had experience in the business eight or nine years. It is unnecessary to consider whether it was proper to ask the witness as to the custom and practice of engineers on the railroad of defendant to stop before passing through a switch. The evidence of both parties introduced without objection tended to show that a rule of the company imposed this duty upon engineers, although there was some testimony tending to show that the rule did

not require it of the engineer without a signal to that effect.

The declaration of McNutt, made the night before the accident, "never mind the switch, it was all right," &c., was admissible for the purpose of showing that he knew where the switch was located. The evidence was competent for this purpose, and its application might have been limited, by an appropriate instruction to the jury at the request of the defendant.

I₁ is not necessary to make proof of a fact judicially known to the court, but proof of such fact is not an error, of which either party can complain. The introduction in evidence of the "American table of mortality" was not a reversible error. *Gordon, Rankin & Co. v. Tweedy,* 74 Ala. 237; *McDonald v. Gold Life Ins. Co.,* 85 Ala. 401; *Highland Ave. & Belt R. R. Co. v. Walters,* 91 Ala. 435.

We will attempt to declare the principles of law which appear to be applicable to the different phases of the evidence. If McNutt, the yard-master and the superior of all the other employees present, personally took the place of the engineer and was running the engine at the time of the accident, the defendant railroad corporation would be liable for his negligence, the same as if the engineer himself had been in charge and had been guilty of the same act of negligence; or if the engineer was in charge running the engine, and McNutt was present, directing and controlling the engineer, at the time, he would be a person, according to the evidence, entrusted with superintendence, within the meaning of subdivision 2 of section 2590, and exercising a superintendence, and the defendant would be liable for his negligence. If the engineer Harrison was in charge, running the engine, acting as such, independent of the presence of McNutt, the defendant would be liable for his act of negligence. Under the evidence in this case, as it appears in the record, it would have been an invasion of the province of the jury for the court to have declared a conclusion upon the different phases of the evidence, under which these questions were presented. We presume from the construction of the complaint, it was intended to meet each one of them.

It is undisputed that McNutt, the engineer Harrison, and the plaintiff, all knew where the switch was located. If it was a rule of the defendant, that the engineer should slow up and if necessary stop his engine before reaching a switch, to ascertain whether it was properly set; and if in disobedience of this reasonable rule, the person running the engine pushed the cars over the switch at a rapid rate when im-

properly set, and caused the derailment and injury, the defendant would be liable, unless the plaintiff was guilty of contributory negligence. If the rules of the company made it equally the duty of the plaintiff to signal the engineer to slow up or stop, as the engine approached the switch, for the purpose of ascertaining the condition of the switch, and he failed to perform this duty, or to see that the signal was given by a proper person, and the derailment and injury resulted in consequence of such negligence also, the plaintiff was guilty of contributory negligence, and could not recover. In such case the plaintiff would have no more right to presume that the engineer would do his duty by slowing up or stopping, than the engineer to presume that plaintiff would do his duty by giving the signal. Under such circumstances both would be guilty of negligence, which proximately led to the result, and if both or either were injured, neither could maintain an action for damages.

It would not follow as a necessary conclusion, that a signal to an engineer running a train at the speed of four or five miles per hour, "to come ahead" or "to come faster," under all circumstances was a signal to quickly increase the speed to fifteen or twenty miles per hour. Such signal not continued to an engineer running within the city limits, having an ordinance in force forbidding a greater rate of speed than eight miles an hour, or to an engineer nearing a switch, where the rules of the company required that the engine should slow up or stop, might well be considered as a signal to move forward at such speed as would not violate the city ordinance, or render impossible a compliance with the rule of the company, which required that the train be slowed up or stopped before reaching the switch. Charges requested by defendant based upon the assumption that the signal "to come ahead" called for an increase in speed from four or five miles to fifteen or twenty miles per hour, under such circumstances, were properly refused.

There was some evidence tending to show that the slow signal was given immediately after crossing 18th Street, other evidence, when about 150 feet from it, and other, when about 200 feet from the switch, and other that there were no slow signals at all. The jury must determine the facts. Did the engineer increase the speed so rapidly that it could not be slowed up or stopped before reaching the switch? If so, was the plaintiff at fault, or did the engineer, of his own accord, or upon the mere signal "to come ahead," under one hypothesis of the evidence we have stated, thus increase the speed of the engine? If the speed of the train

had been increased to eight or ten miles only, instead of fifteen or twenty miles, could the train have been slowed up or stopped as required by the rules of the company? When the speed of the train began to increase more rapidly than was permitted by the municipal law, and to be secure, considering the distance to the switch, did plaintiff use all reasonable diligence to give or cause to be given the slow or stop signal, or was he negligent in this respect? These questions of disputed fact must be determined by the jury and the instructions to the jury should be framed accordingly. The second charge requested was properly refused. It asserts the proposition that if *either* plaintiff or Dixon failed to give the signal in time to avert the danger, the defendant was entitled to a verdict. Under this charge, although plaintiff may have properly and in due time have given the signal to stop, yet because Dixon did not, still the defendant was entitled to a verdict. There is some evidence tending to show that both plaintiff and Dixon signaled the engineer to slow up. Charges 4 and 5 are objectionable for similar reasons.

We can not say that there was no evidence tending to show that McNutt continued to operate or run the engine. He was running it at one time, and it was for the jury to say whether they believed the evidence which tended to show he was only present, but not controlling it, when the accident occurred. Charges 21, 23 and 24 assert the law as we have stated it, and ought to have been given. While it may be true that it was the duty of the engineer to slow up or stop before reaching the switch, the evidence equally tends to show that it was the duty of the plaintiff to have given the signal to slow up or see that it was given in time, before reaching the switch; and if the plaintiff knew where the switch was, and that it was set for the side track, and failed in this duty, and his negligence in this respect caused the accident, he was guilty of such contributory negligence as would defeat his right to recover, notwithstanding the negligence of the engineer or person superintending the movement of the engine, and this would be equally true, if he failed to give the signal in time, so that by the exercise of preventive effort, the person in control of the engine could obey the signal and slow or stop the train before reaching the switch.

It is unnecessary to consider each charge separately. We think the rules of law sufficiently stated to guide the court on another trial.

Reversed and remanded.