139 So. 337

## MOBILE & O. R. CO. v. WILLIAMS.

### 1 Div. 675.

Supreme Court of Alabama.

Dec. 17, 1931.

Rehearing Denied Jan. 21, 1932.

Stevens, McCorvey, McLeod, Goode & Turner, of Mobile, for appellant.

128

Harry T. Smith & Caffey, of Mobile, for appellee.

## ANDERSON, C. J.

■ This case has been before this court on several former occasions and is reported. 217 Ala. 707, 114 So. 918; 219 Ala. 238, 121 So. 722; 221 Ala. 402, 129 So. 60. It is earnestly insisted and ably argued, as was done upon the last appeal, that the defendant was due the general affirmative charge because of insufficient proof of negligence on the part of defendant's agents or servants; that the evidence was merely speculative and conjectural and did not sustain the verdict. This question was fully discussed and dealt with in the last two appeals, and we find no such material change in the evidence upon this appeal as to cause us to recede from the former holding that the negligence of the defendant's servants in causing the cars to be moved without first ascertaining that the intestate was not in a place of danger and would not be thereby injured was a question for the jury. New York Central Railroad Co. v. Marcone, 281 U. S. 345, 50 S. Ct. 294, 74 L. Ed. 892.

■ The trial court did not commit reversible error in permitting the question involved in the 9th assignment of error to wit: "After your husband died did you have anything to live on outside of the insurance money you got?"

It is conceded by appellant's counsel that the financial condition of the wife, at the time of the husband's death, was a proper inquiry, and that this fact had already been shown; but it is insisted that this question was an effort to show her financial condition at a later date, and was calculated to arouse the sympathy of the jury. We think the question is so worded as to relate to the financial condition of the wife at the time of the husband's death or immediately thereafter.

■ As to assignment of error 18, the defendant was not thereby injured, as the question was not answered. The answer of the witness consisted of a general discussion of the value and earning capacity of certain securities, and gave no definite answer to the question asked. As to assignment of error 19, the witness did give the per cent. for 1926, the death of the intestate, but also gave it as the date of the trial so the defendant was not thereby injured. As to assignment of error 20, the witness said there was little or no change from 1926 to the time of the trial.

■ The trial court did not commit reversible error in permitting the question to the witness Grandahl, made the basis of the 23d assignment of error. It merely called for the result of a mathematical calculation of which the court had common knowledge, and of which neither side can complain. L. & N. R. R. v. Mothershed, 97 Ala. 267, 12 So. 714.

■ The objections to the questions to the witness Kostmayer, as to the streets, blocks, and distance at or near the scene of the injury, whether relevant or not, were harmless.

■■ Assignments of error 30 and 31 relate to exceptions to the oral charge as to the duty of the defendant to have the air brakes coupled, and that a failure to do so was negligence. This was error, as held upon a former appeal, 221 Ala. 402, 129 So. 60, wherein the court held that the failure to have the air brakes coupled was not the proximate cause of the injury and should not have been emphasized so as to mislead to the prejudice of the defendant. True, the original opinion was based upon the fact that negligence in this respect, if there was any, was not charged in the complaint, and this was corrected by the opinion on rehearing, and it was then held that the complaint was broad enough to cover such negligence; but the court still held that the charge, as to the air couplings, was erroneous, as negligence in this regard was not the proximate cause of the injury, and a charge with reference thereto would tend to prejudice the jury. As we understand, the present excepted to portions of the oral charge are mere statements as to the legal results of a failure to have the air brakes coupled, but do not instruct or direct a verdict for the plaintiff as for a violation of the statute or rule. It was a mere abstract statement, and, standing alone, may have been prejudicial; but, when considered in connection with the defendant's given charge 23, the latter would explain or neutralize the oral charge. But this cannot be done as the plaintiff, by her given written charges G and Y, put this issue back into the case. Charge G is, in effect, in conflict with the defendant's given charge 23, and charge Y so explains or qualifies defendant's given charge 23 as to destroy the meaning and effect of same. We must therefore hold that the trial court committed reversible error in the excepted to portions of the oral charge and in giving the plaintiff's written charges G and Y. In order that we may not be misunderstood upon the next trial, we think the last opinion as reported in 221 Ala. 402, 129

So. 60, had the effect of eliminating from the case the failure to connect or . couple the air brakes upon the theory that, whether required or not as to the cars in question, but conceding that it was required, a failure to do so was not the proximate cause of the injury, and that this question had no place in the case. That was the effect of our opinion then, and which is also our present conclusion.

■ There was no error in refusing the defendant's requested charge 15. If not otherwise faulty, it called upon the jury to indulge in a speculation of the future as to the health, condition, etc., of Mose Williams, had he lived.

■ There was no error in refusing charges 20, 36, and 35, requested by the defendant; they are confusing, misleading, or argumentative.

Assignments of error 35 and 46 relate to the action of the trial court in not eliminating the element of damages dealt with in the excepted to part of the oral charge and the defendant's refused charge 12. It is not contended in the argument that such damages are not recoverable, but that the same are special damages which should be specifically claimed. We are inclined to agree with counsel that the same should have been claimed, but proof was made of same without objection, and it may be that, if there was no other reversible question in this case, we could treat the present question as not being reversible error under Best Park & Amusement Co. v. Rollins, 192 Ala. 534, 68 So. 417, Ann. Cas. 1917D, 929; Jackson v. Vaughn, 204 Ala. 543, 86 So. 469; Birmingham Southern R. Co. v. Goodwin, 202 Ala. 601, 81 So. 339; Southern Ry. Co. v. Dickson, 211 Ala. 481, 100 So. 665; American Ry. Express Co. v. Reid, 216 Ala. 479, 113 So. 507; but we suggest, as a matter of caution, that if such damage be insisted upon on the next trial they should be specially claimed. This is not a question of variance or failure of proof to come within circuit court rule 34 as suggested by appellee's counsel, but relates to probata without allegata.

For the errors designated, the judgment of the circuit court is reversed, and the cause is remanded.

Reversed and remanded.

THOMAS, BOULDIN, and BROWN, JJ., concur.

BOULDIN, J. (specially concurring).

I fully concur in the view that no causal connection is shown between the injury, and running without the air brakes coupled up. Deceased was killed as the train started to move, or in any event passed far beyond the place where he was crushed by the moving train before his presence was discovered by the enginemen. No condition of the air brakes as a means of stopping the train could have caused the injury.

But if a rule prescribed by law required the air coupled up before starting, and deceased put himself in a place of danger on the faith that the train would not move until this was done, such rule was proper evidence negativing contributory negligence of deceased in mitigation of damages, and also as to the initial negligence of the trainmen in starting the train prematurely without a proper lookout to see that no one was in a place of danger; a danger incurred because the train was not ready to move.

Premature starting of the train in a negligent manner (premature because the air had not been coupled up, and negligent for failure to anticipate and look out for the safety of yardmen in so starting) might, in my opinion, be the proximate cause of the injury. New York Central Railroad Company v. Marcone, 281 U. S. 345, 50 S. Ct. 294, 74 L. Ed. 892.

This would depend on whether the rule was applicable in such yard movements, and deceased may have reasonably relied upon its observance.

The evidence, without dispute, discloses that, to the knowledge of deceased and the trainmen, it was not the custom to couple up the air in switching movements ·of this kind. He could not therefore have put himself in a place of danger in reliance upon the cars not being moved until the air was coupled up; neither was there initial negligence in failing to anticipate such danger and safeguard against it.

The real contention of appellee is that it was unlawful to move these cars at all without coupling the air, and that such unlawful movement was the proximate cause of the injury. Charge Y, in effect, so instructed the jury.

If the movement was not premature as above discussed, the mere fact that it was unlawful, and could not be made at all, without the air being coupled up, was not the proximate cause of the injury. This was definitely declared in both the former appeals. 221 Ala. page 411 [26], 129 So. 60; 219 Ala. page 245 [8], 121 So. 722.

I therefore concur in the present holding that, under this record, the question of negligence for failure to couple up the air, conceding the legal duty so to do, should have been definitely put out of the case.

## On Rehearing.

ANDERSON, C. J.

The appellee seeks a modification of the opinion, in so far as it holds that the ques-

tion of coupling the air brakes is in nowise a material factor in this case. Counsel do not question the holding that the failure to have the air couplings was not the proximate cause of the injury or death of the intestate, but contend that it was open.to the jury to find that Mose Williams was, at the time he was killed, between the cars or under the train in the performance of a duty to couple the air brakes in obedience to a mandatory duty imposed by the statute so as to impose upon McKenna, who had taken charge of the operation of the train, to exercise proper diligence to see that he was not in a place of danger before starting the train in motion. There might be merit in this contention, but for the fact that the undisputed evidence relieved McKenna of any reason to expect or anticipate that Mose Williams was between the cars for the purpose of making the air connection. In other words, the undisputed evidence shows a rule or custom, existing at the time, known to both Williams and McKenna not to make the air coupling or hose connection upon switch movements of this character, and, even in cases when the connection was required, it was to be made by a servant or servants kept for that purpose, and was not to be made by Williams except when a "carman" was not available, and a carman was available on this occasion. Rules (I) and (H); also testimony of plaintiff's witness, McPherson. Said witness also testified: "As a fact, Mose Williams, himself, usually and customarily for a long time, and immediately prior to March 2, 1926, moved similar cuts of cars from the switch yard of the M&O to the L&N Interchange without any air being coupled on the cars."

The defendant's answer to interrogatory 9 is as follows: "Answering the ninth of said interrogatories, the defendant says that it had imposed upon none of its employees any duty to see that the air brakes were coupled upon the cut of cars which was being drawn by engine No. 11 at the time of the death of Mose R. Williams. This movement was a switching movement wholly within yard limits, and there were only ten cars in the cut, some of which were empty. It was not usual nor customary to couple air on such cuts of cars for such movements, and this custom and practice of not coupling air on such cuts of cars for such movements was known to Mose R. Williams, who had himself handled many such movements to the L. & N. Interchange without having air coupled on any of the cars."

Plaintiff's witness Wachter said:

"We also have a general custom down there in the yard as to coupling air on the cars. In carrying cuts of cars in 1926, and prior thereto, in the yards of the M. & O. at Mobile over the New Main Line to the L. & N. Interchange, it was not usual or customary to couple the air on those cars where they move in the day time and consisted of not more than ten cars in the cut. At that time and about that time I did have occasion to observe Mose R. Williams in the handling of such cuts of cars from our switch yards to the L. & N. Interchange." * * * "I have seen Mose R. Williams while acting as switch foreman handle and carry such cuts of cars from the M. & O. switch yard to the L. & N. Interchange without having air coupled. I have seen him do so several times. * * *"

"In March, 1926, and prior thereto, there was no duty on the part of the yardmen, including the switch engine foreman, or switchmen under him, except when car inspectors were not available, to couple air on the cars in any case where air was required. The car inspectors and carmen coupled the air when it was required. I said the trainmen, or the yardmen, never did couple air when the carmen were available. We did at this time have carmen present in the switch yard at a point nearby these tracks. We kept at that time, and prior to that time carmen on duty in the yard at all times, day and night. They had a particular place—at their shanty, where they might be called at any time."

<span style="background:black">    </span> In view of this uncontradicted evidence, we fail to see upon what theory McKenna, or any other servant of defendant, connected with the switching · or movement of these cars, was under the duty to expect or anticipate that the intestate was between or under the cars making the air coupling. Of course, we do not mean to hold that the defendant had the right to adopt a rule or custom in violation of the statute, but we have held that, if the statute was violated, said violation was not the proximate cause of the intestate's death and, as to the other question, we do not think the defendant's servants were charged with conducting themselves under the statutory requirements as against the plain rules and customs of the master. We are still of the opinion that the question of air coupling was not a material factor in the trial of this case for any purpose.

Upon the last appeal, 221 Ala. 402, 129 So. 60, 64, the opinion states: "There was evidence also that the air couplings on this cut were not connected; that it was the duty of decedent to 'help out with coupling the air hose,' that in movements of this kind the cars 'generally have the air hose all coupled up.' There was dispute as to both the latter statements."

We have not examined the former record, but if the quoted statement is supported by the evidence as there disclosed it is not supported by the evidence as disclosed in the present record, and which we have endeavored to demonstrate. The statement that this question was put out of the case by the former opinion may be inaccurate; but it is sufficient to say it had no place in the last trial as dis-

132

closed by the evidence, and should not be considered upon the next trial, unless there is a material change in the evidence from what is disclosed by the present record.

Upon Appellant's Motion for a Modification of the Opinion.

The appellant insists that it was entitled to the general charge. While some importance seems to be attached in the opinion in 221 Ala. 402, 129 So. 60, to what was then regarded as a dispute in the evidence as to the custom of air couplings and the duty of the intestate to help make them, this was but one or an alternative reason for holding that the defendant was not entitled to the general charge. In other words, irrespective of this question, it was there held that the jury could infer negligence on the part of McKenna or Holder, one or both, in permitting the movement of the cars without first ascertaining that the decedent was not in a place of danger; that they did not use proper diligence to locate him or, if they did, they might have discovered him; that he had to go from one side to the other to check some of the seals, and the fact that he was not seen on one side did not relieve them from looking to the other side or under the car. True, the defendant claims that the intestate told or indicated to McKenna that the inspection had been completed, but this was contradicted, inferentially at least, by the book found showing that the inspection had not been completed. At any rate, we still think it was a question for the jury as to the negligence of the defendant's servants in starting the cars. In citing the case N. Y. Central Railroad Co. v. Marcone, 281 U. S. 345, 50 S. Ct. 294, 74 L. Ed. 892, we realized that it was not on "all fours" with the case in hand, but think that it gives some support to the present and two previous holdings that the defendant was not due the general charge.

Both applications denied.