147 So. 819

## MOBILE & O. R. CO. v. WILLIAMS.
### I Div. 721.

Supreme Court of Alabama.
March 23, 1933.

Rehearing Granted April 27, 1933.

Stevens, McCorvey, McLeod, Goode & Turner, of Mobile, for appellant.

Harry T. Smith & Caffey, of Mobile, for appellee.

FOSTER, Justice.

On the three former appeals in this case (219 Ala. 238, 121 So. 722, 221 Ala. 402, 129 So. 60, 224 Ala. 125, 139 So. 337), we held in substance that, because it was the duty of deceased to check the numbers and seals of each of the seven box cars, and numbers on the three coal cars in the "cut" in question, and that to do so he must examine the seals on both sides of the box cars and record the result of such examination, and because the jury could reasonably find that he had not completed the work, and that under the circumstances of this case it was not unusual, but rather customary, to cross from one side to the other of the "cut" to examine both sides, and that in doing so he frequently passed between the cars, and on this occasion he had not signified the fact of his completion of the work, and that he was probably in a position of danger, though he may not have been seen when the movement began, there may be found to have occurred a breach of duty owing to him by not using due care to discover his position before beginning the movement when he was in a position, which such movement made dangerous to him while still in the performance of his duties under his employment in interstate commerce, though he was himself negligent in such performance. We do not think it necessary to

again discuss that question. We remain convinced that it is justified by the evidence in this case.

In this record, as in that of all the former appeals, appellee has injected in the case a matter which we have held in them all has no place, as they there appeared; that is, the question of connecting the air brakes. On the appeal as noted in 219 Ala. 238, at page 246, 121 So. 722, 728, we stated that in "no aspect of the evidence could the condition of the brakes have effected or proximately caused the accident." See Lyon v. Charleston & W. C. Ry. Co. (S. C.) 56 S. E. 18.

On the appeal reported in 221 Ala. 402, 129 So. 60, we first dealt with the sufficiency of counts 5 and 8, alleging the failure to couple the air brakes, with knowledge that one other than plaintiff's intestate was likely to be under the cars for that purpose, and that decedent acted upon the faith of the performance of a duty not owing to him, but to such other employees. We held that the breach of a duty to another could. not be the predicate of an action by plaintiff for the death of her intestate to whom no such duty was alleged. On that same appeal we also held that the court should not have charged the jury that a failure to couple the air brakes was negligence as a matter of law, because such negligence could not have been the proximate cause of the accident.

On the appeal reported in 224 Ala. 125, 139 So. 337, we held that, in view of the uncontradicted evidence that it was not usual or customary to couple the air brakes in such a movement of cars, it was error to give charge G predicated upon a premature movement without making such air connection.

On this appeal defendant offered to prove that there was no such custom or usage. The court sustained plaintiff's objection (transcript, page 31), and there was no other such evidence in this record, though there was evidence that decedent did many times make such movement without coupling the air. As a part of the answers of defendant to interrogatories, put in evidence by plaintiff, she introduced rule 1228 of the transportation department of defendant under a heading in the book of rules of "Conductors in Freight Service." The rule is as follows: "Before starting they must be assured by the car inspector in charge that the air brakes have been tested and are working throughout the train also that the train has been otherwise inspected and is ready for movement."

■ Defendant moved the court to exclude the rule No. 1228, which the bill of exceptions states was introduced by defendant. We do not know whether this last statement is an error or not, for we do not find where defendant introduced that rule. But it appears in answer to interrogatories to defendant, and, when those answers were introduced in evidence by plaintiff no objection was made to this rule, and none had been made by defendant in answering the interrogatories.

There appears, therefore, no reversible error in denying the motion to exclude it. It should have been made not later than the occasion of the offer to introduce the evidence. Sparks v. Reeves, 165 Ala. 352, 51 So. 574; Cotton States Life Ins. Co. v. Crozier, 218 Ala. 173, 118 So. 327; Wallace v. Elliott, 220 Ala. 125, 124 So. 286; Forehand v. White Sewing Machine Co., 195 Ala. 208, 70 So. 147; Mississippi Lumber Co. v. Smith, 152 Ala. 537, 44 So. 475.

■ This brings into the case again the question of the coupling of the air brakes, and, under our rulings, that question is not admissible in any aspect of this case, when it is shown without dispute that the custom was to disregard it; that its only use in this case is to show negligence in prematurely starting the movement on the assumption by decedent that such would not be done until it is complete in that respect, and that such assumption is rebutted by proof of its habitual nonobservance. So that, when on plaintiff's objection defendant was not allowed to make such proof, plaintiff cannot claim that there was negligence predicated upon its absence. In such situation the rule had no evidential effect, if it applied to such a movement at all.

■ But the evidence shows that this rule No. 1228 "does not apply to switching movements within the switching yard and does not apply to switch foremen or yard foremen or yard conductors, but only to conductors of freight trains in the road service." (Transcript, p. 72.) It was expressed in the rule book under the heading of "Conductors in the Freight Service." We do not think it applied to the movement here in question, as disclosed by the uncontradicted evidence. But the rule was in evidence without error. That does not, however, justify an improper use of it in argument to the jury.

In this connection counsel for the plaintiff did argue, and defendant's counsel did object, as follows:

"'You have heard read to you a rule of the Mobile & Ohio Railroad Company, made for the government of their employees, and any employee who violates a rule intended for the protection of human life is necessarily guilty of negligence, and if he injures anybody by reason of that negligence, that person is entitled to recover compensation for such injuries. This rule is numbered 1228. I will read it over to you pretty soon. It provides in plain English as you ever heard in your lives that any man in charge of the operation of a railroad train belonging to the Mobile & Ohio Railroad Company, before starting they must be assured by the car inspector in charge that the air brakes have been tested and are working throughout the

train, also that the train has been otherwise inspected and is ready for movement.'

"To said statement the defendant made and addressed to the court the following objection:

" 'We· object to the statement of counsel that the rule referred to provides that the train cannot be moved and wheels turned until the air brakes have been tested and working.' "

Plaintiff's counsel then, speaking to the jury, observed:

"Gentlemen you will understand, or you would have understood if the gentleman had permitted me to finish my sentence before interrupting me, that I am not asserting or asking you to find, or the court to rule, that the plaintiff in this case is entitled to recover any damages on account of the failure to apply air brakes, or that the air brakes had anything to do with the recovery. This is a rule that is in evidence. I have got a right to discuss that whole rule, and I cannot discuss that whole rule without reading it and impressing upon you what it contains. I will now read the balance of the rule, and you will understand why I am referring to that rule. The rule provides that the person in charge of the train shall not start it until they have been advised that the air brakes have been coupled throughout; that the train had been thoroughly inspected, or that the inspection had been completed, and that the train was otherwise ready to move. Now, gentlemen. everything we do in life, in doing everything we do in life, we have to live under the presumption that the other fellow had done his duty; if it were not for that you could not sit on this jury with a feeling of safety, except of .the presumption that the man who fixed that fan up there did his duty, and that fan won't fall on top of your head while I am arguing this case. You cannot sit down in a theater, except upon the presumption that the fellows that fixed the chair you sit in had done his duty, and that the chair won't fall down when you sit in it, and cause you to bust your head or your back. You cannot walk up the streets of the city except upon the presumption that other people will perform their duties, and so it is that if you are in employment of a railroad, and your duties are to couple air brakes, and couple cars, go under the cars for inspection or for the purpose of checking, and passing from one car to the other, you can not do that except at the peril of your life, unless you rely, and can rely on the fact that the others will do his or their duty and won't start that train while you are under it. * * *

"Now, I will say here, in discussing this law, I will observe in passing, that the violation of this rule I have just read to you is the cause of the killing of Mose R. Williams. If

that rule had been observed Mose R. Williams would have been here today."

The defendant then stated and addressed to the court the following objection:

" 'We object to the statement of counsel that the violation of this rule 1228 was the cause of the death of Mose R. Williams, upon the ground, if your honor please, that the undisputed evidence in the case is that this rule 1228 does not apply in the yards of the M. & O. Railroad, but is a rule applying only to conductors engaged in the freight service, and on trains operated on the road, and not within the yards; on the further ground that the statements in reference to the rule is simply an effort to get before the jury the proposition that the deceased Williams had a right to go underneath or between the cars for the purpose of checking them, on reliance upon the fact that the air was not coupled on the cars, and would .not be coupled before the movement started.'

"The court overruled said objection of the defendant to which said ruling of the court the defendant then and there duly excepted.

"The defendant then moved the court to exclude said statement from the jury, upon the same grounds stated in the objection thereto. The court refused and overruled said motion of the defendant, to which said ruling of the court the defendant then and there excepted.

"The said attorney for the plaintiff thereupon made the following statement to the court:

" 'May it please the court, I repeat again that I am not urging or don't intend to urge, and do not claim that the coupling of the air, or the absence of the coupling of the air was the cause of this accident, or that even the starting without the coupling of the air is the basis of my recovery.' "

To quote again some extracts from the remarks of counsel, they are: "This rule is numbered 1228. * * * It provides * * * (that) before starting they must be assured by the car inspector in charge that the air brakes have been tested and are working throughout the train," etc., and again: "That the violation of this rule I have just read to you (that is, rule 1228) is the cause of the killing of Mose R. Williams. If that rule had been observed Mose R. Williams would have been here today."

While in the argument to the jury and the court counsel did assert that they did not ask for a recovery of damages "on account of a failure to apply the air brakes, or that the air brakes had anything to do with the recovery," it does appear that both before and after counsel made such disclaimer he did argue in effect that a failure to observe that rule in respect to coupling the air brakes caused the death of plaintiff's intestate. (And that was the basis of all the damage claimed.)

The improper remarks of counsel were not withdrawn, the court overruled objection to them, making them even more effective, though counsel also made observations which had a different meaning. Taking into consideration the entire occurrence, we think it shows reversible error.

Two of the counts 3 and 6, on which the case was tried, asserted in substance that defendant's agent, etc., negligently caused the engine and cars to start on a trip when he had reasonable ground to apprehend that plaintiff's intestate was required either by the customary or the necessary method of performing his duties to be in a position where he would probably be injured by so doing. The sufficiency of such averments is not questioned, and pursues the principle to that effect which we asserted on the appeal reported in 221 Ala. at page 408, 129 So. 60.

■ Given charges made the basis of assignments 19, 21, 22, and 23 do not seem to be subject to the objection urged that they are predicated upon the assumption of a duty to another than the decedent. They assert correct legal principles within the issues expressly made in counts 3 and 6. They might only mislead in not referring expressly to plaintiff's intestate, but not to the extent of being prejudicial, unless such effect would follow when considered in connection with the argument of plaintiff's counsel.

■■ The death of plaintiff's intestate occurred in March, 1926. He left a widow and two children. One was about thirteen years old, and the other about six. There was evidence in detail of "his (decedent's) personal qualities and the interest which he took in his family." The complaint as amended alleges that the dependent children suffered the loss of his care, attention, instruction, training, and guidance. Counsel for plaintiff argued that the jury could award damages for such loss by the minor children. To this argument defendant objected, etc. The court charged the jury that, if such children suffered such loss, care, etc., which they would have received except for his having been killed, and if they thereby sustained a pecuniary loss, they should include reasonable compensation for this loss, if they award any damages. To this defendant excepted. The court refused to charge at the request of defendant in writing that they cannot award the plaintiff any damages for the loss by the children of the care, etc., of their father.

All such assignments of error are properly treated as affected by the same legal question.

The act of Congress (Federal Employers' Liability Act [45 USCA §§ 51–59]) is clear that it is intended as compensation for pecuniary loss only. This does not include damages for grief and sorrow or as balm to one's feelings, nor the loss of society and companionship and of acts of kindness which originate in the relation of parent and child, and not capable of measurement upon any pecuniary standard. Michigan C. R. Co. v. Vreeland, 227 U. S. 59, 33 S. Ct. 192, 197, 57 L. Ed. 417, Ann. Cas. 1914C, 176. But, where there is "testimony concerning the personal qualities of the deceased and the interest which he took in his family," it was held proper to charge that the jury may take into consideration the care, attention, instruction, training, advice, and guidance which the evidence showed he reasonably might have been expected to give his children during their minority, and to include the pecuniary value thereof in the damages assessed. Norfolk & W. Rwy. Co. v. Holbrook, 235 U. S. 625, 35 S. Ct. 143, 144, 59 L. Ed. 392; Alabama G. S. R. Co. v. Cornett, 214 Ala. 23, 106 So. 242; Thornton's Fed. Em. Liab. Act (3d Ed.) §§ 172, 173.

There was therefore no error in refusing charge A.

■ We note that the excerpt from the oral charge (assignment 17) does not confine the allowance for care, etc., for the children to the period of their minority. This should be done by the court in such a charge. The authorities are careful that this limitation be stated. Its absence fixes no way to measure the damages on this account short of the life expectancy of decedent. The jury is left to their own idea of the duration of time in which to compute this item. In the Cornett Case, supra, the charge limited this item to the minority of the children, but, as in this case, did not expressly limit it within the life expectancy of decedent. But the court held that such should be held to be its meaning—such care, etc., could only be supplied during the life of the father, whereas it may or may not be done after the minors reach their majority, and the charge permits the jury so to extend it without definite limit.

In Texas it is said that the pecuniary loss of dependent children is not necessarily confined to their minority, but it is so confined unless proof is made of unusual facts that the child might reasonably expect support, etc., reaching reaching majority. Hines v. Walker (Tex. Civ. App.) 225 S. W. 837. In that case a charge was held to be reversible, in the absence of proof of such unusual facts. It was dealing with maintenance and support, not care, etc. Whereas in Kentucky it is said that the question is to be determined in the light of all the facts and circumstances, and it is the duty of the jury to fix the amount of such expectancy by the dependent children, and that the court should not always confine the jury to the minority of the children. Louisville & N. R. R. Co. v. Wingo, 213 Ky. 336, 281 S. W. 170; Chesapeake & O. R. R. Co. v. Shirley, 218 Ky. 337, 291 S. W. 395.

In Gulf, C. & S. F. Rwy. Co. v. McGinnis, 228 U. S. 173, 33 S. Ct. 426, 57 L. Ed. 785, it was held that the act only compensates dependent children to the extent of their pecuniary loss by reason of dependence upon the father by them. Minority is not expressed in the act as the condition, but dependency is held to be meant thereby producing pecuniary loss.

None of those cases was dealing with care, etc., such as is specially claimed in this case.

In view of the language of the United States Supreme Court in the Holbrook Case, supra, in dealing with the care, attention, instruction, training, advice, and guidance, in addition to maintenance and support, as applicable to children during minority, we think that court meant to confine such item to minority, and in that respect not to extend it to the period of dependence which is a basis for loss of maintenance and support. This is so, because we think that it is during minority only such peculiar loss of care, attention, etc., would be sustained.

■■ If the court's charge was thought to be susceptible of a misleading tendency as to whether the jury were limited to the period of minority, this might have been made clear by an explanatory charge or request of defendant. Alabama Gr. So. R. R. Co. v. Cornett, supra.

We do not think that it is necessary to undertake to prove the value of the financial loss of such care, etc., any more than would be necessary to prove the value of pain and suffering or of inconvenience and annoyance when they are elements of damages. The jury should assess the value of such loss in the exercise of their best judgment based on the facts of each case, Mattingly v. Houston, 167 Ala. 167, 52 So. 78; 17 Corpus Juris, 844, but not of course "from their own experiences as men," Michigan C. R. Co. v. Vreeland, supra.

■ We think that given charge BB is substantially the equivalent of our statement of the rule in 221 Ala. at page 409, 129 So. 60, and did not constitute reversible error.

■ Refused charge No. 6 is a "mere accident" charge. There is said to be no reversible error in giving or refusing it. Alabama Produce Co. v. Smith, 224 Ala. 688, 141 So. 674; Loreno v. Ross, 222 Ala. 567, 133 So. 251; Smith v. Baggett, 218 Ala. 227, 118 So. 283.

For the error indicated, the judgment is reversed and remanded.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.

## On Rehearing.

FOSTER, Justice.

■ It is now apparent to us that we failed to note the effect of the contention of appellee, that the ruling of the circuit court on objection to certain features of the argument of plaintiff's attorney for which the judgment was reversed should be construed in connection with charges numbered 12, 19, 20, and 31, given at the instance of appellant.

We are constrained to agree with appellee on rehearing that those charges clearly and effectually eliminated from the jury consideration of those features of rule 1228, to which the argument related, and which we think should not have been brought into the case. This is emphasized by the act of the court in withdrawing from the jury certain features of the oral charge in that respect and substituting matter which we think correctly treated the subject.

We see no reason to conclude that the injury wrought by the argument was not thereby effectually removed in the same manner as such charges would operate upon evidence improperly admitted. Birmingham, R. L. & P. Co. v. Littleton, 201 Ala. 141 (4), 77 So. 565; Empire Coal Co. v. Goodhue, 200 Ala. 265, 76 So. 31.

We cannot agree that thereby an affirmance is not due because of the matter of assignments of error 19, 21, 22, and 23. We think they state principles which are abstractly correct, and, when coupled with such argument of counsel to the jury, they might mislead them, but that such result is not a reasonable inference in the light of the given charges to which we have referred, and the withdrawal of certain features of the oral charge and substitution of correct principles in that connection. In the original consideration of the ruling of the court on objection to the argument, we did not overlook the manner in which it was raised in the circuit court in the light of the case of Birmingham, R. L. & P. Co. v. Gonzalez, 183 Ala. 273, page 285, 61 So. 80, Ann. Cas. 1916A, 543. But we also observed that the rule of this case was modified in this respect in American Railway Express Co. v. Reid, 216 Ala. 479, 113 So. 507, on rehearing, 216 Ala. 484, 113 So. 507, 511.

But we now think that the error which we held sufficient to reverse the case was corrected by the later rulings of the circuit court sufficient to eradicate its injurious effect.

Since we do not find reversible error in any other respect, the application for rehearing is granted, the reversal set aside, and the judgment of the circuit court is affirmed.

Affirmed.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.