77 So.2d 909

**Olivia H. BORISS et al.**

**v.**

**William Wren EDWARDS et al.**

**6 Div. 625.**

Supreme Court of Alabama.

Nov. 4, 1954.

Rehearing Denied Feb. 10, 1955.

Lange, Simpson, Robinson & Somerville, Reid B. Barnes, Birmingham, for appellants.

Gillespy & Dominick, Geo. Peach Taylor, Birmingham, for appellees.

174

CLAYTON, Justice.

This is an appeal from a judgment of the Circuit Court of Jefferson County at law based upon the verdict of a jury. The verdict and judgment were in favor of plaintiffs for $2,500 damages for deceit by alleged misrepresentation in the sale of a house and lot to plaintiffs. Motion for new trial was overruled and this appeal is from the judgment and also from the order overruling the motion for a new trial. The amended complaint, as submitted to the jury, consisted of one count in the following words:

"Plaintiffs claim of the defendants the sum of $5,000.00 as damages for that on the 19th day of October, 1950, the plaintiffs purchased the following described property and the house located thereon:

"Lot 3, Block 6, according to the survey of Oak Grove Estates, as recorded in the Probate Court of Jefferson County, Alabama in map book 32, page 43, and bearing the street address of 109 Gillon Drive.

"Plaintiffs aver that defendants by and through their agent, servant or employee, John Montgomery, III, who was acting within the line and scope of his authority did falsely represent to plaintiffs, and with the intent to deceive plaintiffs or made recklessly without knowledge of the facts, that said house was a good and substantial house and was built with good materials and in a good and workmanlike manner, and that the septic tank on said house would function properly and would absorb or disseminate all sewage from said house, and that the ditch on said premises was a dry ditch except during and shortly after heavy rains and at such times would contain only rainwater. Plaintiff avers that said representations were false, were made to induce plaintiffs to purchase said premises, and that plaintiffs relied upon said representations, believing them to be true. Plaintiffs aver that said house was not a good and substantial house and was not built with good materials and in a good and workmanlike manner in this: the roof leaks, the chimney is improperly installed; the septic tank would not absorb and dissiminate all the sewage from said house but the same bubbled up in plaintiffs' yard causing vile and noxious odors, and said ditch remains partially filled with water almost constantly and same carries effluent or overflow from septic tanks of adjoining or nearby property over and across plaintiffs' lot, causing vile and noxious odors and subjecting plaintiffs' family to the danger of disease and causing plaintiffs' premises to be unsightly due to the slime and muck and effluent deposited by said overflow from said septic tanks on adjoining or

nearby property. From all of which plaintiffs claim damages as aforesaid, and plaintiffs also claim punitive damages."

As a preliminary consideration we set out herein our applicable statutes which may constitute the basis in law for an action of this kind, namely, Sections 108 and 110 of Title 7, Code of Alabama 1940.

"§ 108. Misrepresentations.—Misrepresentations of a material fact, made wilfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently, and acted on by the opposite party, constitute legal fraud."

"§ 110. Deceit.—Wilful misrepresentation of a material fact, made to induce another to act, and upon which he does act to his injury, will give a right of action. Mere concealment of such a fact, unless done in such a manner as to deceive and mislead, will not support an action. In all cases of deceit, knowledge of a falsehood constitutes an essential element. A fraudulent or reckless representation of facts as true, which the party may not know to be false, if intended to deceive, is equivalent to a knowledge of the falsehood."

Assignments of error and argument in brief of appellant are addressed to two general propositions of law which were properly raised in valid manner in the trial court. The first proposition is that the three conjunctively alleged misrepresentations of condition of (1) the house, (2) the septic tank, and (3) the ditch, must all be proved for the judgment to stand; that they together constitute one cause of action, and failure of proof of any one of these three averments must result in reversal of this appeal. The other proposition, broadly stated, is that the evidence of misrepresentation in the case was not of such character as will support a verdict for punitive damages.

Evidence for the plaintiffs was that Mr. and Mrs. Edwards (plaintiffs) one Sunday afternoon drove through the development known as Oak Grove Estates, and talked to Mr. Montgomery who was in the office at the development. They were shown two houses by Mr. Montgomery. The one which they later decided to buy, was not completed but was near completion. The floor was not then finished and some interior decorating was not completed. Other work on the house had been finished. This was about September 1, 1950. The contract for purchase of the house was signed two weeks later. Mr. Edwards inspected the house outside the presence of Montgomery after that first visit, and before the day of the signing of the contract, by picking up the key at the office and himself opening the house. Mr. Montgomery was next seen at the signing of the contract in the office of Mr. James Marbury, but even though Mr. Marbury was present, plaintiffs had no dealing whatever with him. The contract was signed by Mr. Edwards, one of the plaintiffs, and Olivia H. Boriss, one of the appellants. The four appellants and their spouses executed a deed to the plaintiffs conveying the house and lot for a stated consideration of $9,725.00. The representations, made the basis of this action, were stated in evidence by plaintiffs to have been made by John E. Montgomery on the occasion when they first visited the subdivision. Mr. Edwards' testimony stated, in substance, these representations, as follows:

"Q. (Continuing.) What representations did he make as to the manner in which this house would be completed? A. Well, that the house would be completed in first-class order, and that it would be equal to the other houses out there, that it would be—that it was built under the F.H.A. requirements and would be up to their specifications.

"At the time, I asked Mr. Montgomery whether the owners would possibly extend a concrete culvert on to the rear of the property. Mr. Montgomery said that they could not do that.

"He said that the ditch was normally dry, that the purpose of the ditch was merely to take off excess water running off the street during and after a rain.

"I asked Mr. Montgomery in particular about the septic tank, and Mr. Montgomery replied that the county officials had examined those lots, individually, for absorptive; that is, for ground absorptive, or water absorption. He stated that the county had approved all the lots and that, if any trouble did develop so that the septic tank didn't function properly, they would correct the trouble; that is, owners would correct the trouble.

"Mr. Montgomery told me if for any reason the septic tank didn't function properly that they would be responsible for repairing it or fixing it, as required."

Mrs. Edwards' version of these representations, as given in her testimony was substantially as follows:

"A. He told me that the ditch was a wet-weather ditch, that it was for the purpose of draining surplus rain water off the street, and he said that the ditch would contain water only during and after a rain; that otherwise it was a dry ditch. Mr. Montgomery told us it was a rain water ditch and it was dry most of the time.

"Q. What did he tell you in connection with the septic tanks? A. I asked him about it and he said if we had any trouble with it it could be fixed.

"Q. What did he tell you about the completion of the house, the construction of the house? A. He said it would be finished in good order."

The pertinent parts of the testimony of Mr. Edwards on the question of falsity of the foregoing representations are as follows:

"Q. Prior to closing the sale, you saw it at that time, was there anything wrong with the property? A. Not that I could tell.

"Q. The roof did not leak then? A. I didn't know. I hadn't been in the property and I don't know whether it had recently rained. There was no evidence of leaking roof that I saw.

"Q. Was there any evidence of any faulty construction in any manner at the time you closed the sale or prior thereto? A. Not to me; no, sir.

"Q. And did you examine the house and see? How long was it after you got into the house that you had trouble with it? A. It was probably two or three months. It was very soon after I turned on the gas floor furnace.

"There was water came through my ceiling, one of my bedrooms.

"Well, it seemed to be rather constant accumulation, a drip, and saturated the sheetrock to such an extent that the sheetrock became decomposed and stained the walls and part of the ceiling.

"I assumed first that it was a leaky roof. Soon thereafter I tried to contact Mr. Boriss. I wasn't able to reach Mr. Boriss.

"The roof still leaks. That is, water is still there. The condition still exists.

"I haven't made any efforts to alleviate the situation; as I decided, upon further inspection—at least I believed, upon further inspection, that it was a condensation form of heat going through the metal, extending through the roof of the house. Water condenses on that metal exterior and drips constantly on to the ceiling.

"The septic tank was in good condition at that time, so far as I could tell. The house hadn't been used and there had been very little or no water flushed through the septic tank, or to the septic tank.

"Q. Did the septic tank continue to function properly after you went into possession of the house? A. For several months it did.

"After that time the drains extending from the septic tank in my back yard began overflowing, overflowed from

the septic tank and just bubbled up in the yard. It was soft and miry all along through the drains.

"You could see this water, this overflow, that was obviously from the septic tank from the color, and appearance, and odor.

"Well, I would say that it was a little dark, with perhaps some green shades to it and very odoriferous.

"No, sir; the condition does not occur today.

"Shortly after I noticed the trouble that was from the septic tank, I hired a plumber to run my sewer disposal into the county sewer line running behind my property.

"Q. Let me ask you what the condition was at the time you consummated the sale, in connection with the ditch, what condition existed at that time. A. It was dry for a short while, a few months perhaps.

"After that it became quite rainy and the ground somewhat saturated and the ditch started flowing almost continuously. In fact, the septic tanks on adjoining property overflowed into the ditch as they flowed down the street into the street culvert, from all of the houses that had trouble, resulting in flowing directly through my property.

"Q. In other words when he looked at that ditch, there wasn't any mess, muck or water, or anything else in there, was there? A. No, Sir.

"Q. In other words, you didn't know it was going to overflow, did you? A. No Sir.

"Q. So far as you know, he didn't know it? A. As far as I know, he didn't know it.

"Q. So far as you know, Mr. Montgomery might have been as honest as Paul? When he talked to you, he might have thought he was telling you the exact truth? A. Yes Sir.

"Q. You are relatively certain that what he told you was true? A. Yes sir.

"Q. About the septic tank? A. True in so far as the county was concerned.

"Q. Now you call that the Jefferson County sewer. Did you know that Mr. Marbury had that sewer put in there himself? A. Yes sir.

"Q. What you actually did, you connected on to Mr. Marbury's sewer there, put in there with his own money, didn't you? A. Sure.

"Q. (By Mr. Robinson) So far as you know, it had been a dry ditch up to the time this development was put in there, wasn't it? A. So far as I know. I don't know whether the ditch existed before the development."

John E. Montgomery, III, being absent in the armed forces testified by deposition, emphatically denying the making of any representations as testified by plaintiffs. He stated in positive terms that plaintiffs inspected the house themselves and bought on the basis of their own examination of the property.

Mr. William E. Hull, a real estate agent, testified for plaintiffs as to the difference in value of the property as it actually was at the time of the sale and what the value would have been had the property been as represented to the plaintiffs by defendants' agent Montgomery. His testimony placed the actual value of the property at $9,000 at the time of the sale, and the value of the property, had it been as represented, to be $9,750—a difference of $750. Mr. Hull's qualifications as a real estate man were unquestioned and his testimony as to these values was uncontradicted.

We consider the first proposition raised by appellants. In our recent case of Mazer v. Brown, 259 Ala. 449, 454, 455, 66 So.2d 561, 566, this court held:

"We have a line of cases which have established the rule that 'where a single count contains several distinct, inde-

pendent averments, each presenting a substantive cause of action, proof of either cause of action, so averred, will authorize a recovery; but where a count contains several averments, all of which, combined together, make up the averment of but one cause of action, it is necessary to prove each of the averments in order to sustain the cause of action as laid.' Birmingham Railway and Electric Co. v. Baylor, 101 Ala. 488, 13 So. 793; Louisville & Nashville R. R. Co. v. Mothershed, 97 Ala. 261 [12 So. 714]; Southern R. Co. v. Lee, 167 Ala. 268, 52 So. 648; Cartwright v. Braly, 218 Ala. 49 (4), 117 So. 477; Cartwright v. Hughes, 226 Ala. 464, 147 So. 399. It was said in City Loan & Banking Co. v. Byers, 1 Ala.App. 583, 55 So. 951, 952, that, 'The allegation of the falsity of the one alleged representation as an entirety is descriptive of the tort complained of, and is not sustained by proof of the falsity of only a part of such representation.' "

Also, our case of Campbell v. Jackson, 257 Ala. 618, 623, 60 So.2d 252, 256, stated the law to be:

" '* * * where a single count contains several distinct, independent averments, each presenting a substantive cause of action, proof of either cause will authorize a recovery * * *.' Southern Ry. Co. v. Lee, 167 Ala. 268, 274, 52 So. 648, 650; Birmingham News Co. v. Little, 226 Ala. 642(3), 148 So. 398."

A leading case decided by our Court of Appeals, City Loan & Banking Co. v. Byers, 1 Ala.App. 583, 586, 55 So. 951, 952, contains the following statement of the law:

"The ground of recovery disclosed by the complaint is the alleged falsity, accompanied by an intent to defraud, of the representation charged to have been so made by the defendant to the plaintiff as to constitute a false pretense, by means of which the defendant obtained a loan of money from the plaintiff. The representation as aver-

red was of the existence of several facts, which, considered together, were calculated to induce the plaintiff to extend credit to the defendant.

"The plaintiff sets up the fraudulent making of one false representation as constituting a single ground of recovery, not the fraudulent making of several false representations, each of which severally was relied on as constituting a separate ground of recovery. According to the complaint, the making of the one representation as an entirety was the means whereby the plaintiff was induced to make the loan. In such case the complaint is not sustained by proof going no further than to show the falsity of one of the several statements contained in the one representation alleged. The allegation of the falsity of the one alleged representation as an entirety is descriptive of the tort complained of, and is not sustained by proof of the falsity of only a part of such representation. Highland Avenue & Belt R. Co. v. Dusenberry, 94 Ala. 413, 10 So. 274; Smith v. Causey, 28 Ala. 655, 65 Am.Dec. 372; Louisville & Nashville R. Co. v. Coulton, 86 Ala. 129, 5 So. 458; Louisville & Nashville R. Co. v. Mothershed, 97 Ala. 261, 12 So. 714."

The early case of Birmingham Railway & Electric Co. v. Baylor, 101 Ala. 488, 493, 13 So. 793, 795, states the rule which has been quoted many times, viz:

" 'It was not held that when several causes of action averred and relied on for recovery arose under the same subdivision of section 2590 of the Code, were stated separately, but not disjunctively, and each averment contained a substantive cause of action, such a count was demurrable. A count of this character fully informs the defendant that each substantive averment is relied upon, and he may prepare his defense accordingly. Proof of either will authorize a recovery. The distinction must be kept in mind where a single count contains several distinct, inde-

pendent averments, each presenting a substantive cause of action, and a count containing several averments, all of which combined together make up the one cause of action averred. As to the former, proof of either will authorize a recovery, whereas in the latter it is necessary to prove each of the averments in order to sustain the cause of action as laid.' "

Other cases in point on this subject are Preston Motors Corporation v. Wood, 208 Ala. 172, 94 So. 70; Cartwright v. Braly, 218 Ala. 49, 117 So. 477; Cartwright v. Hughes, 226 Ala. 464, 147 So. 399.

■ Proof of the making of a false statement in regard to the condition of the house or the ditch or the septic tank will authorize a recovery in the instant case because each of these averments, stated conjunctively in a single count, presents a substantive cause of action. Proof of one false representation would be complete without proof of the averment as to any one or two of the others, and the loss occasioned thereby could easily be separated from that occasioned by the others. Any one of the three averments can stand alone without the presence of either of the other two to complement it. This disposes of the first proposition adversely to appellants. Authorities, supra.

■ Adverting now to the question of the measure of damages: "We recognize the general rule to be in this state, as contended by appellee's counsel, that if plaintiff retains title and does not offer to rescind, but sues for damages for the deceit, the measure of his damages is the difference between the actual value of the property at the time of the sale, and what it would have been had it been as represented. Tillis v. Smith [Sons] Lbr. Co., 188 Ala. 122, 65 So. 1015; 20 Cyc. 132." Preston Motors Corporation v. Wood, supra, 208 Ala. at page 175, 94 So. at page 71; Southern Building & Loan Ass'n v. Bryant, 225 Ala. 527, 144 So. 367; Creamery Package Mfg. Co. v. Fields, 235 Ala. 602, 180 So. 275.

" * * * that punitive damages may not be recovered in such an action (deceit) unless the fraud is gross, malicious, oppressive, and committed with an intention to so injure and defraud. (Caffey v. Alabama Mach. & Supply Co., 19 Ala.App. 189, 96 So. 454, 457; Ex parte Alabama Machinery & Supply Co., 209 Ala. 466, 96 So. 459; Alabama Mach. & Supply Co. v. Caffey, 213 Ala. 260, 262, 104 So. 509; 24 C.J. 104, § 265)." Southern Building & Loan Ass'n v. Bryant, supra [225 Ala. 527, 144 So. 368]; Creamery Package Mfg. Co. v. Fields, supra; Caffey v. Alabama Mach. & Supply Co., 19 Ala. App. 189, 96 So. 454.

"Punitive damages are recoverable in actions of this character where defendant is guilty of gross fraud (27 Corpus Juris, 104), defined in Caffey v. Alabama Machinery & Supply Co., 19 Ala.App. 189, 96 So. 454, 457, as 'representations made with a knowledge of their falseness (or so recklessly made as to amount to the same thing), and with the purpose of injuring the plaintiff.' " Southern Building & Loan Ass'n v. Dinsmore, 225 Ala. 550, 552, 144 So. 21, 23.

Gauging the evidence by the rule above, we have reached the conclusion that there was no justification for an award of punitive damages and that the verdict of the jury was excessive in the amount of $1,000.

■ There was no proof of any actual intent to deceive appellees by Mr. Montgomery, the salesman for appellants. The defects in the condition of the house, septic tank and ditch were not apparent. So far as the evidence shows, Mr. Montgomery had no more reason to suspect their presence than did appellees. They developed some months later. Hence our conclusion above that the award of punitive damages was not justified. On the question of compensatory damages, however, the evidence was in conflict.

■ While the allegations of the complaint were not exactly matched by the proof, they were substantially, or by in

ference, established by the evidence sufficiently to support the jury in awarding compensatory damages. Schock v. Bear, 250 Ala. 529, 35 So.2d 97; Atlantic Coast Line R. Co. v. Brackin, 248 Ala. 459, 28 So.2d 193; Southern R. Co. v. Lee, 167 Ala. 268, 52 So. 648.

One further proposition merits treatment. Plaintiffs' charge number 1 was misleading in instructing the jury to return a verdict for the plaintiffs in the event they found that defendants had falsely represented "any material fact" as to the condition of the house and lot. It might have been corrected by an explanatory charge. However, under the circumstances of this case, the giving of the charge was not erroneous to the extent of being injurious to the defendants in view of the fact that the allegations of the complaint referred to three alleged misrepresentations and likewise the evidence of the plaintiffs referred only to these same three alleged misrepresentations. The jury could not reasonably have understood the charge to refer to any other representations. On that account, the giving of the charge was error without injury.—Supreme Court Rule 45, Code 1940, Tit. 7 Appendix.

The judgment will stand reversed, and the cause remanded, unless the appellees shall, within thirty days after this date, file a remittitur pursuant to § 811, Tit. 7, Code 1940, reducing the judgment from $2,500 to $1,500. Let notice issue to appellees accordingly. If the appellees shall file such remittitur, the judgment will be reduced and affirmed for the sum of $1,500.

Affirmed conditionally.

LIVINGSTON, C. J., and SIMPSON and STAKELY, JJ., concur.

On Rehearing

Opinion corrected and application for rehearing overruled.

LIVINGSTON, C. J., and SIMPSON, STAKELY and MERRILL, JJ., concur.