320 So.2d 690

**UNIVERSAL BROKERS, INC.**

v.

**Roger D. HIGDON, d/b/a Jolly Roger Mobile Home Sales.**

**Civ. 490.**

Court of Civil Appeals of Alabama.

Sept. 3, 1975.

Rehearing Denied Sept. 24, 1975.

Thomas A. Smith, Jr., Cullman, for appellant.

Miles T. Powell, Decatur, for appellee.

HOLMES, Judge.

This is an appeal of a jury verdict and judgment thereon from the Circuit Court of Cullman County, in favor of the original defendant, appellee here, on his counter-claim.

The only issue presented· by this appeal is whether the trial court committed reversible error in failing to grant the motion for new trial of the original plaintiff, appellant here, in that punitive damages should not have been awarded.

The corporate plaintiff filed suit claiming money owed to it by defendant Higdon. The defendant thereafter filed a counter-claim alleging money owed to him by plaintiff and further claiming punitive damages predicated on an action of fraud.

· The case was submitted to the jury on the above mentioned claim and counter-claim, and the jury thereafter returned one verdict in favor of the original plaintiff for $11,-146.26 and one verdict for the original defendant on his counter-claim in the amount of $19,146.26. Immediately after the jury returned the aforementioned verdicts the following colloquy occurred between the court and the jury, which appears in the record:

"THE COURT: . . . It would appear in the first instance on the complaint you will have to tell me, Mr. Foreman, if this is correct. Do you intend to return a verdict on the complaint to the Corporation of $11,146.26?

"THE FOREMAN: Yes, sir.

"THE COURT: And against Mr. Higdon, is that correct?

"THE FOREMAN: That is correct.

"THE COURT: Now, that is on the complaint, you found for the corporation and against Mr. Higdon in the amount of $11,146.26. Now, on the counter-claim it would appear to me that—You will have to tell me, did the Jury return a verdict in favor of the plaintiff on the counter-claim and against Mr. Higdon, the counter claimant, did you mean to hold for· the Corporation on the counter·claim, too?

"THE FOREMAN: Yes, sir, that is correct. The way we figured it out, we kindly, we meant for Mr. Higdon, that is his debt, plus interest.

"THE COURT: He is supposed to pay $11,146.26?

"THE FOREMAN: That's right.

"THE COURT: And the corporation is to pay him nothing on the original claim.

"Now, on the counter-claim—

"THE FOREMAN: The corporation is to pay him nineteen something.

"THE COURT: $19,146.00, that left $8,000.

"THE FOREMAN: We figured that is punitive damage."

The jury, after instruction from the trial court, then returned one verdict for $8,000 in favor of the original defendant on his counter-claim.

It is, accordingly, clear to this court that the award is for punitive damages based on defendant's claim of fraud.

Plaintiff-appellant contends that there is no proof of fraud upon which punitive damages could be awarded.

The following pertinent facts can be gleaned from the record:

Defendant-appellee Roger D. Higdon operated Jolly Roger Mobile Home Sales from February of 1972 through August of the same year. The business was financed under a floor plan arrangement with plaintiff-appellant Universal Brokers, Inc. Under the terms of the contract entered into between appellant and appellee at the inception of their relationship, appellee was to pay appellant both the factory cost of mobile homes sold by him and a $100 commission, at the time of their sale. Any profit realized on the sale above this amount would inure to appellee. Appellee was also liable for expenses connected with repossession of mobile homes sold by him, unless they were later transferred.

Appellee contends that the president of appellant corporation informed him that he would receive certain rebates on his sale of mobile homes, although nothing to this effect appears in the aforementioned contract.

By June of 1972, the condition of appellee's business had substantially deteriorated and he was in a precarious financial situation. It was during this month that he wrote two checks to pay appellant for mobile homes sold by him, which checks were not honored by his bank. In August of 1972, appellant went out of business. The aforementioned checks written by appellee, along with certain repossession expenses owed by him, formed the basis of plaintiff-appellant's claim against appellee.

The basis of defendant-appellee's counter-claim, as stated by him in brief, is that he never in fact received the rebate percentages which appellant through its president informed him he would receive. As such, he sued for money owed, and for fraud.

■■ As seen from the above, it is clear that the jury awarded punitive damages. It is equally clear that in Alabama punitive damages may not be recovered unless the fraud is gross, malicious, oppressive, and committed with intention to injure and deceive. *Boriss v. Edwards,* 262 Ala. 172, 77 So.2d 909. The pertinent cases indicate that the primary constituent of gross, malicious, and oppressive fraud is the intention to injure and deceive. See cases cited *infra.* Furthermore, in Alabama the existence *vel non* of an act of fraud is generally a fact question for the jury. *Mid-State Homes, Incorporated v. Holt,* 52 Ala.App. 415, 293 So.2d 476.

This court has diligently searched the record for any evidence of such fraud. While our scrutiny was conducted applying all due presumptions favoring the correctness of the jury verdict strengthened by the trial court's denial of the motion for new trial, we are convinced that there must be a reversal.

■ There is not a scintilla of evidence in the record which can supply the intent to defraud requisite to an award of punitive damages. From the authorities and from the decided Alabama cases, it is clear that the jury has no untrammeled discretion to speculate upon the existence of fraudulent intent, but that any such finding must be based upon a reasonable inference from specific evidence. Intent to defraud must be clearly proved by a preponderance of the evidence. 37 C.J.S. *Fraud* § 119.

In *Hall Motor Co. v. Furman,* 285 Ala. 499, 234 So.2d 37, an automobile dealer sold a wrecked and rebuilt automobile to a buyer as a new vehicle; however, on the basis of this act alone, it was held the buyer was not entitled to punitive damages. Where the owner of a house represented to the buyer that there was nothing wrong with it, and the septic tank subsequently failed to operate, it was held that without more there could be no award of punitive damages. *Boriss v. Edwards, supra.* The Alabama Supreme Court in *Boriss* stated:

"There was no proof of any actual intent to deceive appellees by Mr. Montgomery, the salesman for appellants. . . . Hence our conclusion above that the award of punitive damages was not justified. . . ." (262 Ala. at 179, 77 So.2d at 915)

Representative Alabama cases in which the evidence showed such fraud as to justify the imposition of punitive damages are as follows: *Schock v. Bear*, 250 Ala. 529, 35 So.2d 97; *J. Truett Payne Co. v. Jackson*, 281 Ala. 426, 203 So.2d 443; *Southern Building & Loan Ass'n v. Bryant*, 225 Ala. 527, 144 So. 367; *Southern Building & Loan Ass'n v. Dinsmore*, 225 Ala. 550, 144 So. 21. Such a determination will more often than not involve the question of whether from all the attendant facts and circumstances in the particular case, the foundation for an inference as to intent can be constructed.

█ This court cannot find sufficient evidence upon which to ground an inference that actual intent to defraud did in fact exist, even if it be hypothetically conceded that a misrepresentation did occur. Appellee's evidence shows merely that representations took place, and nothing more. There is nothing to create an aura of suspicion as to an intent to defraud which would render the award of punitive damages permissible. Put another way, we can find no evidence as presented in the instant appeal that indicates gross, malicious, or oppressive fraud committed with an intention to injure and deceive. At best, appellee's evidence shows either a breach of contract or misrepresentation not shown to be gross, malicious, or oppressive.

It can also be noted that the following exchange took place between counsel for appellant and appellee:

"Q  Did you try to get part of the agreement, in your agreement, was part of the inducement to get you to sign the contract these figures, he said you would get these figures that were actually one-half percent higher than you have got on the board?

"A  I believe Mr. Bromley at that time was sincere when he was—"

As such, appellee by his own admission states his lack of belief in any fraudulent intent on the part of appellant's representative with regard to the rebate representations.

It should finally be noted that this court can appreciate the difficulty the learned trial judge experienced due to the fact that much of the testimony was extremely ambiguous and contradictory, and that some two hundred exhibits, most of dubious pertinence to the issue on this appeal, were introduced.

In view of this court's conclusion that there is no evidence of fraud to justify the imposition of punitive damages, the trial court erred to reversal in refusing to grant appellant's motion for new trial.

Reversed and remanded.

WRIGHT, P. J., and BRADLEY, J., concur.