[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1331 
The plaintiff sued the defendant for breach of contract and fraud in the sale of a mobile home by defendant to plaintiff. The jury returned a verdict in favor of plaintiff in the amount of $3,425. Judgment was entered thereon. The defendant appeals and we affirm.
The dispositive issue is whether there is sufficient evidence to support the verdict.
A review of the record reveals the following:
The defendant wanted to sell his used mobile home. He made an arrangement with one Steve Davis, a mobile home salesman, whereby Davis would sell the mobile home in exchange for a commission of $200.
After the mobile home was moved adjacent to a sales lot where Davis worked, the plaintiff, who was uneducated and apparently suffered from learning and communication difficulties, made inquiries as to the mobile home and agreed to buy it. There is evidence that the oral contract for sale included repairing a hot water heater, supplying and hooking up kerosene tanks, and setting up an awning and porch.
In addition, the record indicates that Davis prepared a memorandum of sale which itemized the costs of the mobile home. These costs included a $100 "filing fee" and a sales tax of $103.12.
The agreed upon sales price was $3,750. Adding the purported filing fee and sales tax, the total price was $3,953.12. Plaintiff paid $750.12 as a down payment and financed the unpaid balance of $3,203 through a local bank. However, plaintiff made no payments on the loan.
After living in the mobile home approximately three weeks the plaintiff notified the defendant that he was revoking acceptance of the mobile home and demanded the return of the down payment. The defendant refused, the plaintiff moved out, and the defendant took possession.
Subsequently, the plaintiff filed suit for breach of contract and fraud and, as indicated above, a judgment was entered against the defendant.
The defendant, through able counsel, first contends that there was no breach of contract which justifies revocation of acceptance. The defendant argues that the contract for sale did not include kerosene tanks and that the awning and porch were delivered as agreed. In addition, the defendant contends that revocation was not justified because even assuming nonconformity, it did not substantially impair the value to the buyer. The defendant further argues that the plaintiff did not notify the defendant of any nonconformity which could have been cured and that the plaintiff therefore is barred from revoking acceptance.
However, as indicated, the plaintiff testified that during the oral negotiations, the defendant agreed to supply and hook up the kerosene tanks and failed to do so. He further stated that the porch and awning delivered were not the same porch and awning as contracted for. Additionally, he testified *Page 1332 
the hot water heater was never repaired as promised and never worked.
In this instance where there was conflicting evidence, it was for the trier of fact to determine whether there was a contract and a breach thereof which substantially impaired the value of the mobile home. Clayton v. Simpson, Ala.Civ.App.,346 So.2d 457 (1977).
Considering plaintiff's testimony concerning the oral contract, the jury was free to find a breach thereof. Likewise, considering the testimony that plaintiff had no hot water or heat due to the failure to repair the hot water heater and to deliver the kerosene tanks, there is evidence to support a finding of substantial impairment of value. This is especially so in light of the fact that plaintiff's brief occupancy occurred during the winter.
In addition, there is evidence that the plaintiff contacted the defendant complaining of the above defects. Also, the plaintiff's attorney wrote a letter to the defendant demanding the return of the down payment.
Under these circumstances, the jury could properly determine the defendant had been given proper notice of nonconformity and revocation. Gigandet v. Third National Bank, Ala.,333 So.2d 557 (1976).
Thus, there is sufficient evidence to support damages for breach of contract to the extent of $750 which represents the amount paid by the plaintiff to the defendant.
The defendant next contends that the evidence does not support a verdict for fraud in this instance because there was no misrepresentation made to the plaintiff of a material fact. He further argues that even assuming there was a misrepresentation, there was no reliance thereon, no inducement to act, and no injury to the plaintiff.
As indicated above, Davis drafted a bill of sale showing a "filing fee" and sales tax as part of the purchase price. This document was used as a basis for obtaining credit and these items were included in the financed portion of the purchase price. That is to say, believing these items were part of the cost, plaintiff borrowed an amount sufficient to pay them and gave this amount to defendant.
The record indicates that Davis's employer (a mobile home dealer) customarily charged a $100 "filing fee" to record mortgages, where sales were company financed. Davis, himself, testified that the instant sale was not a sale by his employer but was a sale between two individuals, the plaintiff and defendant. Further, the sale was not company financed, but bank financed. Davis also testified that in this instance the bank would be the proper party to record any security interest. The bank did, in fact, record its security interest and charged the plaintiff a separate "filing fee."
Further, Davis testified that where a filing fee was collected by his employer, the salesman involved prepared filing documents. In this instance, Davis prepared no such documents.
In addition, Davis testified that his employer customarily charged sales tax in the sale of a mobile home. However, Davis testified that this transaction was not a sale by his employer, but was between two individuals. Section 40-23-2 (4), Code of Ala. 1975, clearly indicates that the transaction involved was not a taxable event since the defendant was not "engaged in the business" of selling mobile homes.
In this instance, the "filing fee" and sales tax were collected by defendant and Davis but never remitted to the proper authorities.
Based upon the above, there was sufficient evidence for the jury to conclude that there had been a misrepresentation of a material fact because Davis led plaintiff to believe payment of these costs was necessary in consummating the transaction.Jackson Co. v. Faulkner, 55 Ala. App. 354, 315 So.2d 591 (1975).
We further note that whether the plaintiff relied upon a false representation, thereby being induced to injuriously change his position because of it was a question of *Page 1333 
fact for the jury. Old Southern Life Ins. Co. v. McConnell,52 Ala. App. 589, 296 So.2d 183 (1974). The above evidence is sufficient to support a finding of detrimental reliance because the plaintiff relied upon the representations in legally obligating himself to repay an amount necessary to cover the amount charged.
The defendant also contends that the damages awarded were excessive under the evidence and that punitive damages could not be awarded in this instance because any fraud committed was not malicious, oppressive, or gross. There was no intent to deceive and no injury to the plaintiff, according to defendant's argument.
As indicated above, the plaintiff suffered actual damages as a result of the fraud. For punitive damages to be awarded under these circumstances, the fraud committed must have been gross, malicious, and oppressive. Ron Shafer Chevrolet v. Hires, Ala.Civ.App., 347 So.2d 1358 (1977). The primary constituent of gross, malicious, and oppressive fraud is the intention to injure and deceive. See, Universal Brokers, Inc. v. Higdon,56 Ala. App. 184, 320 So.2d 690 (1975).
As indicated above, Davis collected a "filing fee" and sales tax knowing that the bank lending the money was the party who would record a security interest and knowing that the sale was between two individuals. Davis knew that he was not acting on behalf of his employer, the mobile home dealer, and was clearly not acting on behalf of the bank. Davis was acting on behalf of the defendant only.
In addition, Davis, the defendant's agent, was experienced in these matters and the plaintiff had little education as well as learning and communication difficulties. We think the jury, considering all of the above, could have reasonably inferred an intent to defraud because Davis knew that a filing fee should not have been collected and that sales tax was not necessary. This inference is buttressed by the fact that the filing fee and sales tax were kept by the defendant and never remitted to the state. State Farm Mut. Auto Ins. Co. v. Ling, Ala.,348 So.2d 472 (1977); Higdon, supra; McConnell, supra.
Thus, the award of punitive damages in this instance was proper to the extent of the verdict. Huntsville Dodge, Inc. v.Furnas, Ala.Civ.App., 361 So.2d 585 (1978).
The defendant next contends that he should not be held liable for the acts of Davis in making any misrepresentation because Davis had no authority to prepare any documents of sale and because any misrepresentation was never ratified.
In addressing these contentions, we again note the defendant actually received $3,953.12 from the plaintiff for the purchase of the mobile home. Included in the amount was the heretofore mentioned "filing fee" and sales tax.
We further note that the defendant does not deny that Davis was his agent, but contends that Davis had no authority to prepare any documents on his behalf.
Under the facts as set forth, it was for the jury to determine the scope of the agency relationship and the above evidence is sufficient to support a finding that Davis was acting in the scope of his employment when he prepared the document of sale because such a document was ordinary, usual, and necessary to record the down payment and form a basis for obtaining the loan. Treadwell Ford, Inc. v. Wallace,49 Ala. App. 308, 271 So.2d 505 (1973).
Furthermore, a principal will be liable where the fraud of his agent is ratified, though such act was not within the scope of the agent's authority. Caldwell v. Caffey, 269 Ala. 543,114 So.2d 560 (1959).
In this instance, the defendant knew that the selling price of the mobile home was $3,750. The defendant was present at the bank and endorsed the plaintiff's loan of $3,203. The defendant had already received over $400 as a down payment, Davis had received his $200 commission, and another individual had been paid over $100 to move the mobile home. Thus, there is evidence that the defendant had actual knowledge that the amount of the total sales price was *Page 1334 
$203 more than the price of the mobile home.
In addition, the record indicates that the sales memorandum was used in connection with the preparation of the bank loan. This memorandum clearly set out charges for a "filing fee" and sales tax. As indicated above, the defendant was actually present at this transaction and endorsed the loan agreement.
We think the above evidence is sufficient to support a finding that defendant accepted the benefits of the additional proceeds with knowledge of the material facts concerning the transaction and ratified the acts of his agent. TuskegeeInstitute v. May Refrigeration Co., Inc., Ala., 344 So.2d 156,on remand, 344 So.2d 160 (1977).
In any event, a principal is liable for his agent's fraud though committed without the principal's participation or consent, if it is done in the course of his employment, and is not a willful departure from it. Further, it is sufficient if the agent acts within the apparent scope of his authority. See,Gulf Electric Co. v. Fried, 218 Ala. 684, 119 So. 685 (1928), and cases cited therein. See also, McConnell, supra.
We have already concluded that preparing the document of sale in this instance was within the scope of the agent's employment. Davis testified that such a document was ordinarily prepared and was necessary in connection with obtaining the bank loan. The defendant testified that he never told Davis not to prepare such a document. Thus, there was no willful departure from Davis's course of performance and the defendant is liable for his agent's fraud regardless of his participation or ratification. Fried, supra.
This case is due to be affirmed.
AFFIRMED.
WRIGHT, P.J., and BRADLEY, J., concur.