Appellees, Thomas A. and Virginia L. Dekle, filed this action against appellants, Earle, McMillan Niemeyer, Inc. and Maxine Pope for fraudulent misrepresentation of a material fact. A judgment for $30,000 was entered upon a verdict in that amount and defendants appeal.
We affirm.
In March 1974, the Grand Hotel Company conveyed Lot 6, Unit 4, of Lakewood Club Estates to Charles Merritt. The conveyance was recorded and was subject to various restrictions, conditions, covenants and easements. One of the restrictions contained in that warranty deed was:
 "(e) In the event the Grantee, his heirs or personal representatives, fail, for a period of five (5) years after the date of this deed, to commence construction of, and to prosecute with diligence to completion, a residence in accordance with the aforesaid restrictions on said property, the Grantor reserves unto itself, for a period of three (3) years after the expiration of the time herein permitted for construction of a residence on the herein described property, the right and option to repurchase said property . . . at the price herein paid to the Grantor for such property."
Maxine Pope is a licensed real estate salesperson operating under the direction of Earle, McMillan Niemeyer, Inc., a real estate brokerage firm located in Baldwin County. In December 1977, Pope contacted the Dekles, who were planning to move to Baldwin County, and offered to show them property there. During January 1978, Pope showed them two condominiums, a house, and Lot 6, Unit 4, of Lakewood Club Estates.
Pope testified that on 4 February 1978, she and Mr. Dekle viewed Lot 6 and at that time she informed him of the restrictions on the property, including the repurchase option. Pope also testified that she particularly informed Mr. Dekle that there were approximately seventeen (17) months upon which to build a home on the lot before the Grand Hotel Company could exercise its option to repurchase Lot 6, Unit 4. Each of the Dekles testified that they viewed Lot 6 with Pope on the occasion she testified about and nothing was said about the repurchase option.
Later, during the same day, an offer to purchase Lot 6 for $55,000 was executed and signed by Mr. Dekle. This offer was rejected by the sellers, Wayne and Dorothy Gustafson. A few days later the Dekles raised their offer to $59,200, which was accepted. Both parties agreed to delay closing of the sale until July 1978.
Mr. Dekle requested a copy of the restrictions concerning Lakewood Club Estates prior to the July closing. He received a copy of the "Declaration of Restrictions, Conditions, Covenants and Easements of Lakewood Club Estates, Unit Four, as *Page 99 
owned by Grand Hotel Company", which had been recorded at Miscellaneous Book 24, pages 513-21, but which did not contain the repurchase option found in the recorded deed from the Grand Hotel Company to Merritt.
About 14 July 1978, the closing took place with only Pope and Mr. Dekle present. At this time Dekle received the closing documents, including copies of the deed and title binder. Only the following restrictions were contained in that deed:
 "(1) Restrictive covenants contained in instrument executed by Grand Hotel Development Corporation recorded in Miscellaneous Book 24, page 513, and in Deed Book 462, Page 965.
 "(2) Prior reservation of all oil, gas and minerals, and all rights in connection therewith, as contained in instrument recorded in Deed Book 462, Page 965."
Dekle testified that he asked Pope about the restrictions in Deed Book 462, page 965, and that she told him the deed book and page number in both paragraphs were identical and they both referred to the same thing. Dekle's copy of the deed was then introduced as evidence. On the side of the deed next to the restrictions were written the words: "what it meant" and then the words "nothing but oil and mineral rights". Pope testified that she didn't recall such a conversation and insisted that she had earlier told Dekle about all the restrictions, including the repurchase option. Both Pope and Starke Irvine, a principal in Earle, McMillan Niemeyer, Inc., testified that the repurchase option was an important restriction and should have been communicated to the Dekles.
On 8 August 1979 the Dekles entered into an agreement to sell Lot 6 to David Head for $90,000. Two days later, on 10 August 1979, the Grand Hotel Company notified the Dekles by certified mail of its decision to exercise the repurchase option set out in Deed Book 462, pages 965-67. The Dekles testified that this was the first time they knew of the repurchase option. Immediately, they called Pope and Irvine to inquire about this restriction and to ask for assistance in straightening out the problem. After three days, failing to receive a reply, Mr. Dekle contacted Irvine again but was told that there was nothing either Irvine or Pope could do to help the Dekles.
Dekle then contacted Jim McLean, who worked for the Grand Hotel Company, and they negotiated an agreement whereby the Grand Hotel Company paid the Dekles $59,262.50, the purchase price originally paid by the Dekles. The Grand Hotel Company then sold the property to Head.
In this appeal, Pope, and Earle, McMillan Niemeyer, Inc., contend the trial court erred in denying their motions for a directed verdict and j.n.o.v. In support of such argument, they claim the evidence conclusively established that the alleged fraudulent act was discovered or should have been discovered by the Dekles at the time of the closing of the sale of the property on 14 July 1978, well over one year prior to the filing of this suit in January 1980.
Under § 6-2-3, Code 1975, an action for fraud must be brought within one year from the discovery of the fraud. The statute of limitations will not begin to run until the plaintiff knows of facts which would have put a reasonable mind on notice of the possible existence of fraud. Seybold v. Magnolia Land Co.,376 So.2d 1083 (Ala. 1979).
In order to show that they fell within the savings period of the statute of limitations, the Dekles presented evidence that they did not know of the repurchase option in the deed until such option was exercised by the Grand Hotel Company. Mr. Dekle testified that he and his wife had, in fact, planned to build a home on Lot 6, Unit 4, before he became ill. He also testified he would not have bought the property if he had known there was a repurchase option in the original deed that was incorporated in the deed to him and Mrs. Dekle. Most importantly, Dekle testified that he had no reason to doubt the truth of the statements made by Pope, especially after he questioned her concerning the meaning of the restrictions referred to on the deed to him and Mrs. Dekle. *Page 100 
Facts showing a fraud are considered to be discovered when they should have been discovered by one who has acquired knowledge sufficient to provoke inquiry in the mind of a person of ordinary prudence. Butler v. Guaranty Savings Loan Ass'n,251 Ala. 449, 37 So.2d 638 (1948). One who is being deceived, however, may be lulled into a false sense of security. Consequently, "[a] party thus situated is not required to presume fraud or suspect it, until something comes to him leading a just person to suspect and make inquiry." Williams v.Bedenbaugh, 215 Ala. 200, 110 So. 286 (1926).
Pope, and Earle, McMillan Niemeyer, Inc. contend the Dekles were placed on notice about the repurchase provision in the deed because that restriction was in public records. However, testimony was presented to the jury indicating that Pope made an incorrect representation to the Dekles about the restriction and from that the jury could, and did, determine that the Dekles relied upon such misstatement. Real estate brokers and salespersons should not be exempt from responsibility for statements and representations they make to induce a purchaser to act, when, under the circumstances, these amount to fraud in a legal sense. Real estate brokers and salespersons are subject to professional standards as established by § 34-27-31, Code 1975, and should use extreme caution and care in making statements and representations to their clients.
The question of when the Dekles actually discovered the fraud is a question of fact properly to be decided by the jury.Papastefan v. B L Construction Co., Inc. of Mobile,356 So.2d 158 (Ala. 1978); appeal after remand, 385 So.2d 966 (Ala. 1980). A directed verdict may not be given where the evidence is open to a reasonable inference of material facts unfavorable to the moving party. Roberts v. Carroll, 377 So.2d 944 (Ala. 1979). Because the jury could, and did, decide from the evidence that the statute of limitations had not yet run, the trial court did not err by denying defendants' motion for a directed verdict. Williamson v. United Farm Agency of Ala.,Inc., 401 So.2d 759 (Ala. 1981).
Additionally, Pope, and Earle, McMillan Niemeyer, Inc., claimed the trial court erred in denying their motion for j.n.o.v. This court recently reaffirmed the rule that a post-trial motion for j.n.o.v. is really just a renewal of the party's motion for directed verdict, and that motion cannot be granted unless the motion for a directed verdict should have been granted. Williams v. United Farm Agency of Ala., Inc.,supra. Because defendants' motion for directed verdict was properly denied, we hold the trial court did not err in denying the defendant's motion for j.n.o.v.
Pope, and Earle, McMillan Niemeyer, Inc. also contend that in an action for fraud, punitive damages can be awarded only if the fraud is malicious, oppressive, or gross. They believe that the excessive nature of the damages demonstrates the verdict herein awarded punitive damages. We disagree that the verdict necessarily includes an award of punitive damages, although an award could be sustained under the evidence in this case.
Generally, damages in an action for fraud consist of the difference between the value of property as it was represented and its actual value. Boriss v. Edwards, 262 Ala. 172,77 So.2d 909 (1954). The Dekles paid a consideration of $59,200 for the property. At the time the repurchase option was exercised, the Dekles had already signed an agreement, with a willing and able buyer, to sell the property for $90,000. Had Lot 6, Unit 4, been free of the restriction as it was represented to be, i.e., not subject to the repurchase restriction, then the Dekles would have received a $30,800 profit from such conveyance. The jury verdict of $30,000 is somewhat less than that which could have been appropriately awarded to the Dekles, as compensatory damages, by application of the principle enunciated in Boriss.
For the foregoing reasons, the judgment below is due to be, and is hereby, affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, ALMON, BEATTY and ADAMS, JJ., concur. *Page 101