512 So.2d 46 (1987)
CAHABA VALLEY DEVELOPMENT CORPORATION, INC., and Murray D. Roper
v.
Leroy NUDING and Hazel R. Nuding.
84-785.
Supreme Court of Alabama.
May 22, 1987.
Rehearing Denied July 24, 1987.
*47 John W. Sudderth of Sudderth & Somerset, Birmingham, for appellants.
James W. May, Gulf Shores, for appellees.
PER CURIAM.
This is an appeal from a judgment on a jury verdict awarding the plaintiffs, Mr. and Mrs. Nuding, $63,000 in a fraud action, and from the denial of defendants' post-trial motions. The alleged fraud was a misrepresentation of the number of acres in a parcel of land purchased by the Nudings. The defendants were Cahaba Valley Development Company, Inc. ("Cahaba Valley"), the seller of the property; its president, Murray Roper; and Southern Realty, which listed the property for sale. Only Cahaba Valley and Roper have appealed.
The Nudings were interested in purchasing a home. They testified that they intended to train horses and needed three acres of property for that purpose. On January 7, 1978, Mrs. Nuding read a newspaper advertisement offering for sale a house and three acres of land. She and her real estate agent, Faye Robinson, viewed the property. About a week later they viewed the property again and were accompanied by Lois Tillotson, a representative of Southern Realty. Mrs. Nuding testified that Mrs. Tillotson told her at this time that the property was three acres and pointed out the boundaries of the property. Mrs. Nuding testified, however, that it turned out that part of the land Mrs. Tillotson pointed out was not included in the deed description of the land the Nudings bought. The testimony indicated that the property was "rough" and covered with trees, and that neither it nor the neighboring property had fences.
On February 12, the Nudings signed a contract to purchase the property for $34,500. The contract described the property as being three acres, more or less. Shortly thereafter, they moved into the house and agreed to pay rent if the sale did not close. They lived there until the closing on July 7, 1978. Because Mr. Nuding was working 12-hour days, seven days a week, he did not spend much time on the property. Mrs. Nuding said that they did not use or maintain any of the property except the house and front yard during this period, and that they did not inspect the acreage in the back because they were waiting for a survey.
Southern Realty employed a surveyor who, on the day before the closing, surveyed the property and drew up the survey. The survey did not state the number of acres. The surveyor testified that his stakes could not be seen without walking the property line and that, after the closing, he computed the acreage and found that the property consisted of only 1.23 acres, including .13 acres taken by a city street. Thus, the property included only 1.1 acres of usable land.
Both Mrs. Nuding and the surveyor testified at trial that she did not ask him if the property included three acres. She testified that she saw him only when he first arrived, at which time she said "I hope we've got our three acres." On cross-examination, a defense attorney asked Mrs. Nuding about a statement she had allegedly made to the defendants approximately eight months after the closing, to the effect that she had asked the surveyor on the day before the closing if she had three acres and that he had answered, "[W]ell, I don't know. It looks like it, but it's so chopped *48 up I'll have to figure it out." In this statement Mrs. Nuding allegedly also said that, on the morning of the closing, her husband looked at the surveyor's stakes and said "this is no three acres," and that she answered to him "the surveyor said so." In response to this examination, Mrs. Nuding admitted that she had made statements to the effect that the surveyor had told her "he would have to go back and figure it out," and that her husband "just looked out there and said it [didn't] look like three acres to him." Mr. Nuding testified that he did not inspect the property before the closing.
Mrs. Nuding testified that at the closing, she asked Juanita Whitehead, the owner and registered broker of Southern Realty, "[A]re you sure we have our three acres before it closes?" Both Mr. and Mrs. Nuding testified that Mrs. Whitehead pointed to the survey and said, "Yes, you got two acres over here and here is the other acre." Both of the Nudings testified that they were not given a copy of the survey until the sale had been closed. Mrs. Nuding looked at the survey on the way home and calculated that the property was not three acres.
The jury specified its award as including $18,000 compensatory damages and $45,000 punitive damages. Appellants contend that the evidence is insufficient to support the compensatory damages award.
In denying the defendants' motion for judgment notwithstanding the verdict or, in the alternative, for a new trial, and their motion for remittitur, the trial court stated:
"Hazel Nuding further stated her opinion that the property had a value of $12,000 an acre, so that she and her husband were entitled to recover $18,000.00 as compensatory damages for the one and one-half acres of land which they had not received."
The surveyor's testimony indicates that the property was 1.77 acres less than three acres, or 1.9 less if the street is not counted. Several witnesses referred to the property as including only one and a half acres. Although Mrs. Nuding's testimony was not given precisely in the proper form of stating the value of the house and lot if it included three acres and the value as it existed, the trial court instructed the jury that it was to award damages based on this difference in fair market values at the time of the sale. See Earle, McMillan & Neimeyer, Inc. v. Dekle, 418 So.2d 97 (Ala.1982); Boriss v. Edwards, 262 Ala. 172, 77 So.2d 909 (1954). Given this correct instruction and the trial court's finding that her testimony supported the jury's award of compensatory damages, the judgment is not due to be reversed on this ground.
Appellants also argue that the evidence was insufficient to submit the question of punitive damages to the jury. In its opinion and order on the post-trial motions, the trial court concluded:
"The evidence presented at the trial was sufficient to support the jury verdict against all three Defendants, Cahaba Valley, Roper, and Southern Realty. Under the evidence submitted, the jury could also find that the misrepresentations made by the Defendants were made with knowledge that they were false or made so recklessly and heedlessly as to amount to the same thing as knowledge that the representation[s] were false. See, e.g., Ex parte Smith, 412 So.2d 1222 (Ala.1982)."
The trial court's original draft of its order included a part that would have granted a remittitur; the court mistakenly included that portion in its final order. By amendment, the court deleted that portion, stating: "After further reflection and consideration of the evidence presented in this case, the Court decided that it could not in this case order a remittitur." The corrected order included the following:
"This Court has carefully considered the evidence in this case regarding the conduct of the three Defendants. Based on the evidence most favorable to the Nudings, this Court is unable to conclude that the amount of $45,000.00 awarded by the jury as punitive damages is so excessive as to indicate prejudice, passion or some other controlling sentiment."
Reviewing the record, we find no error in the trial court's conclusion that the issue of punitive damages was properly submitted to the jury under the principle of Ex parte *49 Smith, cited in the trial court's order, supra. Furthermore, we find no error in the trial court's findings and conclusions that the verdict was supported by the evidence. The trial court did not err in denying the motion for new trial.
Appellants argue that, because the Nudings suspected before the closing that the property did not comprise three acres, their reliance on any fraud by the defendants was unreasonable. In Bedwell Lumber Co. v. T & T Corp., 386 So.2d 413 (Ala.1980), a similar argument was made. The purchaser expressed concern about whether the portion of the property that had been subdivided into lots would percolate so as to allow septic tanks, and the seller responded by saying that the lots had been approved for septic tanks; that response turned out not to be true for several of the lots. This Court addressed the reasonable reliance argument as follows:
"We have no quarrel with the basic legal proposition that the representee's reliance must be reasonable under the circumstances; and, where a party has reason to doubt the truth of the representation or is informed of the truth before he acts, he has no right to act thereon. We reaffirm the principle of the law of fraud that knowledge of such facts which ought to excite inquiry and which, if pursued, would lead to knowledge of other facts, operates as notice of these other facts.
"These legal propositions, however, do not operate, here, to bar recovery. Mr. Grant testified that he was induced to close the sales transaction on the strength of Mr. Bedwell's representation that only the undeveloped property had percolation problems, and that the subdivided lots had been cleared for use of septic tanks....
"To accept Appellant's contention in this regard would be tantamount to a holding that T & T Corporation, despite Mr. Bedwell's representation, was obligated as a matter of law, to instigate an independent investigation."
Id., at 415 (citations omitted).
We note that the evidence was disputed as to whether the Nudings had actual cause to suspect that the property was not three acres or whether they had no such cause but simply had specific requirements for three acres of land and so wanted assurance that the property was that large. Mrs. Nuding testified that she took Mrs. Whitehead's word because she had no reason to question her veracity. Evidence indicates that Mrs. Whitehead, in Mr. Roper's presence at the closing, responded to Mrs. Nuding's question by indicating that the property definitely included three acres, indicating on the survey which was in her hand but which she did not give to the Nudings at that time. Given these and the other facts of record, we conclude that the judgment is not due to be reversed on this issue.
Appellants contend that the trial court erred in allowing the Nudings to call a rebuttal witness whose testimony was not arguably in rebuttal.
The trial court has wide discretion in deciding to allow or disallow testimony which is not strictly in rebuttal. White v. Boggs, 455 So.2d 820 (Ala.1984). In their brief, appellants indicate that most of the testimony by the rebuttal witness concerned matters already testified to and uncontradicted by the evidence. They argue that allowance of this testimony prejudiced their case. They do not show how they were prejudiced. Our review of the record does not disclose any abuse of discretion in the trial court's allowing this testimony.
On motion of the Nudings, we have determined that a final judgment was rendered in this cause on December 5, 1984, and that interest shall accrue from that date. Rule 37, A.R.A.P.
The judgment is hereby affirmed.
AFFIRMED.
MADDOX, JONES, ALMON, SHORES, BEATTY, ADAMS and STEAGALL, JJ., concur.
TORBERT, C.J., and HOUSTON, J., concur in part and dissent in part, with opinion by HOUSTON, J.
*50 HOUSTON, Justice (concurring in part and dissenting in part).
I agree with the majority that it was not an abuse of discretion for the trial court to permit the Nudings to call a rebuttal witness when it was questionable as to whether his testimony was in rebuttal. I dissent on the fraud issue.
The defendants filed a motion for a directed verdict and a motion for a judgment notwithstanding the verdict. One element essential in all fraud actions is the right of the plaintiff to reasonably rely on the misrepresentation. MJM, Inc. v. Casualty Indemnity Exchange, 481 So.2d 1136 (Ala. 1985); Earnest v. Pritchett-Moore, Inc., 401 So.2d 752 (Ala.1981). Where a party has a reason to doubt the truth of the representation, he has no right to act thereon. MJM, Inc. v. Casualty Indemnity Exchange, supra. Mahoney v. Forsman, 437 So.2d 1030 (Ala.1983).
The undisputed evidence is that Mrs. Nuding viewed the property twice before the purchase contract was signed and that the boundaries of the property were indicated by gestures. Mrs. Nuding admitted that when she was first shown the property she observed that there was insufficient land to build a horse training ring unless it was built at the back door of the house. The contract described the property as three acres more or less. The Nudings moved into the house on February 12, 1978, and stayed there until the closing on July 7, 1978, almost five months later. Though the Nudings denied walking the property or doing yard work during this five-month period, Mr. Nuding did build a half-acre horse pen on the property during this time. On the day before the closing the property was surveyed. Eighteen-inch-high stakes with colored ribbons tied to them were placed at all corners. The survey that was drawn up did not indicate the number of acres. Mr. Nuding, after looking at the stakes, commented that it did not look like three acres to him. Mrs. Nuding asked the surveyor, before the closing, if the lot contained three acres. The surveyor stated that he did not know and that he would have to go back and figure it out. Mrs. Nuding did not ask the surveyor again about the acreage prior to closing. The survey was seen by Mrs. Nuding before the closing, but she did not request a copy of it. The legal description in the deed was the surveyor's description and did not specify the acreage. Clearly, the plaintiffs had grave doubts about the total number of acres before the closing. Clearly, the plaintiffs knew where the lot lines were before the closing. Clearly, the plaintiffs knew that the surveyor who actually did the field work, prepared the legal description, and drew the survey did not know if the property contained three acres. Clearly, the plaintiffs knew that the surveyor could compute the number of acres but did not ask him to do so before the closing. Clearly, Mrs. Nuding did not request to personally examine the survey that she saw at the closing, prior to the sale being closed. Immediately after the closing Mrs. Nuding could tell that the lot did not contain three acres by examining that very survey. These are undisputed facts. To me it appears, as a matter of law, that the plaintiffs had no right to rely on the representations of the defendants that the lot contained three acres. Ostrichism cannot and must not be encouraged in our free, litigious society. I would reverse and render judgment for the defendants; therefore, I dissent.
TORBERT, C.J., concurs.